## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN, LLC**, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>**JACOB LEW**,<br>     **U.S. Secretary of the Treasury**, *et al.*,<br><br>           Defendants. | Civil Action No. 12-cv-565 (RLW) |

### MEMORANDUM OPINION

Plaintiffs Ryan, LLC, G. Brint Ryan, and Gerald Lee Ridgely (collectively, "Plaintiffs") bring this action against Jacob Lew, in his official capacity as the U.S. Secretary of the Treasury,[1] and against Douglas H. Shulman, in his official capacity as the Commissioner of the Internal Revenue Service ("IRS") (collectively, the "Government").  Plaintiffs challenge certain provisions of Title 31, Section 10 of the Code of Federal Regulations—commonly known as "Circular 230"—that generally limit the use of contingent fee arrangements in connection with the preparation and filing of refund claims with the IRS.  *See* 31 C.F.R. § 10.27.  More specifically, Plaintiffs mount three distinct attacks against Circular 230: (1) Ryan, LLC and Mr. Ryan argue that Circular 230 violates their rights under the Petition Clause of the First Amendment (Count I); (2) Mr. Ryan argues that Circular 230 violates his Fifth Amendment Due Process Rights (Count II); and (3) Mr. Ridgely brings suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, arguing that the IRS exceeded its statutory authority in promulgating Circular 230 (Count III).  Plaintiffs seek a declaratory judgment that Circular 230's restrictions of contingent fee arrangements in the context of "ordinary refund claims" is

---

[1]     Plaintiffs originally brought suit against Timothy Geithner, but upon his confirmation, Secretary Lew was automatically substituted as the named defendant.  FED. R. CIV. P. 25(d).

unconstitutional and exceeds the scope of the IRS's authorizing statute, and they seek a permanent injunction barring the enforcement of Circular 230's restrictions on the use of contingent fee arrangements for "ordinary refund claims."

This matter is presently before the Court on the Government's Motion to Dismiss Counts I and II.  (Dkt. No. 10).  The parties previously appeared before the Court for a hearing on the Government's Motion on November 19, 2012, at which time the Court alerted the parties to its concerns as to whether Ryan, LLC and Mr. Ryan possess standing to pursue their constitutional claims.  At the conclusion of the hearing, the parties sought leave to submit supplemental briefs on the standing issue, which the parties have now done.  (*See* Dkt. Nos. 21, 22, 23).  Upon careful consideration of the parties' respective briefs and supplemental briefs, the presentation of counsel during the hearing on November 19, 2012, and the entire record in this action, the Court concludes, for the reasons set forth herein, that Mr. Ryan lacks standing to pursue his Due Process Clause claim and that Count II will therefore be **DISMISSED** for lack of jurisdiction. The Court also concludes that both Ryan, LLC's and Mr. Ryan's Petition Clause claims under Count I will be **DISMISSED** pursuant to Rule 12(b)(6) for failure to state a claim.  Accordingly, the Government's Motion to Dismiss Counts I and II is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

## BACKGROUND

### A.  Factual Summary

Circular 230 prescribes rules governing the practice of attorneys, certified public accountants, enrolled agents, enrolled actuaries, and appraisers before the IRS.  (Dkt. No. 1 ("Compl.") at ¶ 34).  Circular 230 was promulgated by the IRS under authority granted to it by statute.  (*Id.* ¶ 35 (citing 31 U.S.C. § 330)).  Circular 230 is divided into five subparts that

establish: (i) rules governing the authority to practice before the IRS; (ii) duties and restrictions relating to practice before the IRS; (iii) rules applicable to disciplinary proceedings; (iv) rules applicable to disqualification of appraisers; and (v) general miscellaneous provisions.  (*Id.* ¶ 36). Simply stated, Circular 230 delineates who may practice before the IRS, the standards and restrictions such persons must follow, and the sanctions imposed for violations of such standards and restrictions.  *See* 31 C.F.R. §§ 10.1–10.93.

Beginning in 1994, Circular 230 restricted the use of contingent fee arrangements for preparing original income tax returns; however, the regulations allowed the use of contingent fee arrangements for the preparation and filing of amended returns and/or refund claims, so long as the practitioner "reasonably anticipate[d] at the time the fee arrangement [was] entered into that the [amended] return [or refund claim] will receive substantive review by the IRS."  (Compl. at ¶ 38 (quoting *Regulations Governing the Practice of Attorneys, Certified Public Accountants, Enrolled Agents, and Enrolled Actuaries Before the Internal Revenue Service*, 59 Fed. Reg. 31,523, 31,525 (June 20, 1994))).  In promulgating these regulations, the IRS explained that "Treasury continues to believe that a rule restricting contingent fees for preparing tax returns supports voluntary compliance with the tax laws by discouraging return positions that exploit the audit selection process."  (*Id.* (quoting 59 Fed. Reg. at 31,525)).

In September 2007, however, the IRS promulgated a final rule that amended Circular 230's regulations and expanded the limitations on the use of contingent fee arrangements.  *See Regulations Governing Practice Before the Internal Revenue Service*, 72 Fed. Reg. 54,540 (Sept. 26, 2007).  In response to public comments, the IRS explained that "[t]he Treasury Department and the IRS continue to believe that a rule restricting contingent fees for preparing tax returns supports voluntary compliance with the Federal tax laws by discouraging return positions that

exploit the audit selection process."  (Compl. at ¶ 39 (quoting 71 Fed. Reg. 6,421, 6,423-24 (Feb. 8, 2006)).  Circular 230 now provides that, in most circumstances, "a practitioner may not charge a contingent fee for services rendered in connection with any matter before the [IRS]."  31 C.F.R. § 10.27(b)(1).  However, Circular 230 does allow for some exceptions to this limitation, "for services rendered in connection with the Service's examination of, or challenge to: (i) [a]n original tax return; or (ii) [a]n amended return or claim for refund or credit where the amended return or claim for refund or credit was filed within 120 days of the taxpayer receiving a written notice of the examination of, or a written challenge to the original tax return."  *Id.* § 10.27(b)(2). Additionally, a practitioner may properly charge a contingent fee "for services rendered in connection with a claim for credit or refund filed solely in connection with the determination of statutory interest or penalties assessed by the [IRS]," or "for services rendered in connection with any judicial proceeding arising under the Internal Revenue Code."  *Id.* § 10.27(b)(3), (4).

The term "contingent fee" is defined as "any fee that is based, in whole or in part, on whether or not a position taken on a tax return or other filing avoids challenge by the [IRS] or is sustained either by the [IRS] or in litigation," and also includes "a fee that is based on a percentage of the refund reported on a return, that is based on a percentage of the taxes saved or that otherwise depends on the specific result attained."  *Id.* § 10.27(c)(1).  The regulations define "[m]atter before the Internal Revenue Service" as:

> [T]ax planning and advice, preparing or filing or assisting in preparing or filing returns or claims for refund or credit, and all matters connected with a presentation to the [IRS] or any of its officers or employees relating to a taxpayer's rights, privileges, or liabilities under laws or regulations administered by the [IRS].  Such presentations include, but are not limited to, preparing and filing documents, corresponding and communicating with the [IRS], rendering written advice with respect to any entity, transaction, plan or arrangement, and representing a client at conferences, hearings, and meetings.

*Id.* § 10.27(c)(2).  As relevant here, Circular 230 proscribes the use of contingent fee

arrangements for what the Plaintiffs term "ordinary refund claims," *i.e.*, claims for refund filed after taxpayers have filed their original tax return, but before the IRS initiates an audit of the return(s).   (Compl. at ¶ 2).[2]   It is precisely this restriction—Circular 230's application to "ordinary refund claims"—that Plaintiffs challenge herein.

Ryan, LLC, a leading global tax services firm, alleges that "[a]n integral part" of its business "has historically been the representation of clients on a contingent fee basis in the preparing and filing of 'Ordinary Refund Claims.'"   (*Id*. ¶ 20).   Ryan, LLC asserts that the "ordinary refund claims" it has prepared and filed on behalf of its clients "typically have not involved complex legal issues, or in many cases, any legal disputes at all.   Instead, these refund claims have usually been extremely fact intensive inquiries that required an enormous outlay of time, energy, and resources."   (*Id.* ¶ 22).   According to Plaintiffs, Ryan, LLC's efforts in "[c]ompiling, organizing, preparing, and analyzing the volumes of data necessary to establish the validity of such claims results in substantial expenses being incurred upfront, in the preparation of the claim."   (*Id.*).   Given this, Ryan, LLC alleges that its "clients have preferred the use of contingent fee arrangements when pursuing Ordinary Refund Claims."   (*Id.*).   Ryan, LLC alleges that it "has lost clients and substantial revenue due to the Circular 230 prohibition on the use of contingent fee arrangement for services rendered in connection with the preparation and filing of 'Ordinary Refund Claims.'"   (*Id.* ¶¶ 8, 49-51).   Through this suit, Ryan, LLC asserts that Circular 230's restrictions infringe upon the "First Amendment right to petition the Government for a redress of grievances," through the filing of "ordinary refund claims."   (*Id.* ¶¶ 1, 54-60).

---

[2]      The Government takes issue with Plaintiffs' use of the term "ordinary refund claim," as "not descriptive of the regulatory prohibition."   (*See* Dkt. No. 22 ("Defs.' Supp.  Opp'n") at 1 n.1).   The Court understands the Government's argument, but, for purposes of this opinion, the particular label used by Plaintiffs makes no meaningful difference.

Plaintiff G. Brint Ryan ("Mr. Ryan") is the founder and chairman of Ryan, LLC.  For his part, he asserts that, because of Circular 230's prohibition on the use of contingent fee arrangements, he "is unable to retain a practitioner on a contingent fee basis to prepare and file an Ordinary Refund Claim on his behalf."  (*Id.* ¶ 24).  Elsewhere in the Complaint, however, Mr. Ryan avers that, while unable to obtain representation on a contingent fee basis, he has nevertheless "filed an Ordinary Refund Claim since the effective date of the 2007 revisions to Circular 230." (*Id.* ¶ 25).  Along with Ryan, LLC, Mr. Ryan alleges that Circular 230 violates his rights under the Petition Clause of the First Amendment, and he also claims that Circular 230 violates his Fifth Amendment due process rights by depriving him of the ability "to obtain a refund for an overpayment of tax."  (*Id.* ¶¶ 1, 9, 54-60, 61-66).[3]

### B.  Procedural History

Plaintiffs filed their Complaint in this matter on April 11, 2012.  (*See generally* Compl.).  On July 23, 2012, the Government filed its Motion to Dismiss Counts I and II, seeking the dismissal of Plaintiffs' constitutional claims under Federal Rule of Civil Procedure 12(b)(6) on the grounds that they fail to state plausible claims under either the Petition Clause or the Due Process Clause.  (*See* Dkt. No. 10-1).  The parties subsequently stipulated to a briefing schedule, and the Court set a hearing on the Government's Motion for November 19, 2012.  (*See* Dkt. No. 11; Minute Entry, Aug. 1, 2012).  In the course of preparing for that hearing, however, the Court developed some concerns as to whether Ryan, LLC and/or Mr. Ryan had standing to pursue their constitutional claims.  The Court raised these concerns with the parties during the hearing on November 19th, setting forth in detail its doubts about Plaintiffs' ability to establish standing.

---

[3]     Inasmuch as Mr. Ridgely's claim under the APA (Count III) is not the subject of the Government's Motion, the Court, in the interest of judicial economy, foregoes a detailed discussion of the allegations underpinning his claim.

(*See* Dkt. No. 20 (Transcript)).   At the conclusion of the hearing, the parties asked to submit supplemental briefing, which the Court allowed.   (Dkt. No. 19).   The parties have since filed their supplemental briefs on the issue of standing, and this matter is now ripe for decision. [4]

## ANALYSIS

### A.  Legal Standards Governing Article III Standing

"Article III of the Constitution strictly limits the federal judicial power to resolving 'Cases' and 'Controversies.'"   *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting U.S. CONST. art. III, § 2).   As the Supreme Court very recently reiterated, "no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."   *Clapper v. Amnesty Int'l USA*, --- U.S. ---, 133 S. Ct. 1138, 1146 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).   Of course, standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   Ensuring that a plaintiff has standing to sue is thus a necessary "predicate to any exercise of [the Court's] jurisdiction."   *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc).   "The question of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise."   *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (internal quotation omitted); *see also Info. Handling Servs. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1028 (D.C. Cir. 2003).

First, to satisfy the "irreducible constitutional minimum of standing" under Article III, a plaintiff must demonstrate: (1) that it has suffered an "injury in fact"—an actual or imminent

---

[4]      Plaintiffs requested a hearing on the Government's Motion, but the Court, in its discretion, does not believe that the presentation of oral argument would be of assistance to the Court, and finds this matter suitable for decision on the papers.   *See* LCvR 7(f), 78.1. Accordingly, the Court denies Plaintiffs' Motion for an Oral Argument (Dkt. No. 24).

invasion of a legally-protected, concrete, and particularized interest; (2) a causal connection between the alleged injury and the defendant's conduct at issue; and (3) that it is "likely," not "speculative," that the injury "will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 560-61.  "This triad . . . constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).  In addition, a party must be able to demonstrate prudential standing, by showing that its grievance "arguably fall[s] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1266 (D.C. Cir. 2004) (quoting *Bennett*, 520 U.S. at 162)).  In this Circuit, prudential standing, like Article III standing, is jurisdictional.  *See Steffan v. Perry*, 41 F.3d 677, 697 (D.C. Cir. 1994); *Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n.2 (D.C. Cir. 1994).

If either Article III or prudential standing "is lacking, then 'the dispute is not a proper case or controversy, [and] the courts have no business deciding it, or expounding the law in the course of doing so.'" *Dominguez*, 666 F.2d at 1361 (quoting *DaimlerChrysler Corp.*, 547 U.S. at 341) (alteration in original).  It also bears emphasis that, "[w]hen there is doubt about a party's constitutional standing, the court must resolve the doubt, *sua sponte* if need be." *Lee's Summit v. Surface Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000); *see also Catholic Social Serv. v. Shalala*, 12 F.3d 1123, 1125 n.2 (D.C. Cir. 1994) ("Because standing is a jurisdictional doctrine, the district court [is], of course, obliged to consider the issue *sua sponte*.").  Indeed, where the Court has doubts about a party's standing, it is reversible error to bypass standing and to proceed to the

merits of the case, even "where the merits question may be easily answered." *Dominguez*, 666 F.3d at 1362.[5]

At the pleadings stage, "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984).  While the Court "must assume that the plaintiff states a valid legal claim and must accept the factual allegations in the complaint as true," *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012), a plaintiff's factual allegations "will bear closer scrutiny" in resolving issues of standing, "than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2d ed. 1987)).

Finally, the Court is mindful of admonitions from both the Supreme Court and our Court of Appeals that the standing inquiry is "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional," as Plaintiffs' claims would require here. *Clapper*, 133 S. Ct. at 1147; *see also Alaska Legislative Council v. Babbitt*, 181 F.3d 1333, 1337 (D.C. Cir. 1999); *Cheneweth v. Clinton*, 181 F.3d 112, 115 (D.C. Cir. 1999).

With these standards firmly in mind, the Court turns to consider whether Plaintiffs possess standing to maintain their constitutional claims in this action.

---

[5]    The Court expresses no view on the merits of the Plaintiffs' claims.  Instead, the Court heeds its duty "not to decide the questions on the merits for or against the plaintiff" and "assume[s] that on the merits the plaintiffs would be successful in their claims."  *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

**B.  Ryan, LLC Has Standing To Pursue Its Petition Clause Claim (Count I)**

Beginning with Plaintiffs' claim under the Petition Clause of the First Amendment, the Court first examines whether Ryan, LLC possesses standing to pursue this claim.  As an initial matter, there appears to be no legitimate dispute that Ryan, LLC satisfies the requirements of constitutional standing under Article III.  According to the allegations of the Complaint, it has suffered the loss of "a significant number of clients and several million dollars in revenue" as a result of Circular 230's prohibition on the use of contingent fee arrangements for Ordinary Refund Claims.  (Compl. at ¶ 23).  The nature of this claimed injury suffices to satisfy the first prong of Article III standing.  *See, e.g.*, *Lepelletier v. FDIC*, 164 F.3d 37, 42-43 (D.C. Cir. 1999) ("[T]he denial of a business opportunity satisfies the injury requirement.").  Moreover, Ryan, LLC credibly alleges that its revenue and clientele losses are fairly traceable to Circular 230's prohibition on the use of contingency fee arrangements, and that its claimed injury is likely to be redressed by a favorable decision from the Court.  (Compl. at ¶¶ 23, 49-51).  Thus, Ryan, LLC meets the necessary requirements to establish Article III standing.

However, the parties quarrel over whether Ryan, LLC satisfies the prudential standing requirements to pursue its Petition Clause Claim.  For its part, Ryan, LLC effectively concedes that its particular injuries—which are economic in nature—do not fall within the zone of interests protected by the First Amendment's Petition Clause.  Instead, Ryan, LLC seeks to invoke third-party standing (sometimes referred to as *jus tertii* standing) on behalf of its clients. (Dkt. No. 21 ("Pls.' Supp. Mem.") at 2 ("Ryan, LLC satisfies the . . . prudential standing requirements to assert its Petition Clause claim on behalf of its clients and taxpayers.")).  On this point, our Court of Appeals has recognized "three prudential considerations to be weighed when determining whether an individual may assert the rights of others: (1) 'the litigant must have suffered an 'injury in fact,' . . . (2) 'the litigant must have a close relation to the third party,' and

(3) 'there must exist some hindrance to the third party's ability to protect his or her own interests.'" *Lepelletier*, 164 F.3d at 43 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  The Government does not challenge Ryan, LLC's ability to satisfy the first of these elements, but takes issue with the latter two, arguing that Ryan, LLC cannot establish a sufficiently close relationship with its clients, and that there is no hindrance that precludes Ryan, LLC's clients from seeking to vindicate their own Petition Clause rights.

The Court need not dwell long on the first of these arguments.  As the D.C. Circuit has explained, the "close relation" criterion of third-party standing is intended to ensure that there is "an identity of interests between the parties such that the plaintiff will act as an effective advocate of the third party's interests." *Lepelletier*, 164 F.3d at 44.  This standard is met here. Ryan, LLC is interested in setting aside Circular 230's contingent fee prohibition so that it can resume contingent compensation agreements with its clients and can benefit from the renewed business opportunities and increased revenues that will result.  According to Ryan, LLC, its clients' interest in upending Circular 230 is to reduce the initial outlay of cost in pursuing "ordinary refund claims" by enabling them to "shar[e] the expenses associated with the preparation and filing of these claims" through contingency fee payments.  (Pls.' Supp. Mem. at 18).  While not identical, Ryan, LLC's interests are certainly closely aligned with those of its clients (and potential clients), and both seek the same result—the elimination of Circular 230's contingent fee restrictions so they can enter into "mutually advantageous" contingent fee arrangements.  *See Lepelletier*, 164 F.3d at 45 (explaining that "*jus tertii* standing does not require a perfect match").

The Government's second argument, however, requires a closer look.  As a general rule, "[a] plaintiff may assert the rights of a third party only when there is some hindrance to the third

party's ability to protect his or her own interests." *Rumber v. District of Columbia*, 595 F.3d 1298, 1301 (D.C. Cir. 2010); *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1362 (D.C. Cir. 2000).   Ryan, LLC does not even attempt to argue that any such impediment, or "hindrance," exists here.  It makes no suggestion that its individual taxpayer clients—whose First Amendment Petition Clause rights Ryan, LLC ostensibly seeks to vindicate—are somehow precluded from pursuing these claims in their own right.

Instead, Ryan, LLC contends that, because it asserts a First Amendment violation, "it is not necessary for the Court to find that those third parties would be hindered from bringing this action on their own behalf."  (Pls.' Supp. Mem. at 15).   In so arguing, Ryan, LLC correctly points out that the Supreme Court has seen fit to relax the "hindrance" component of third-party standing in the free speech context, such that "where the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims."  *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 957 (1984).   There, the Supreme Court reasoned:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity.  Society as a whole then would be the loser.  Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.  "Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

*Id.* at 956-57; *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) ("Within the context of the First Amendment . . . the Court has enunciated other concerns that justify a lessening of prudential limitations on standing.").  Ryan, LLC urges the Court to adopt this relaxed approach in evaluating its Petition Clause claim.  While unable to cite to any case in which this leniency

was specifically applied to a First Amendment Petition Clause claim—rather than a claim under the Speech Clause, *see, e.g.*, *Munson*, 467 U.S. at 956-59; *Reese Brothers, Inc. v. U.S. Postal Service*, 531 F. Supp. 2d 64, 69-70 (D.D.C. 2008)—Ryan, LLC insists that, "given the fundamental and inseparable nature of the various First Amendment rights, the relaxed standing requirements apply to claims involving all First Amendment rights." (Dkt. No. 23 ("Pls.' Supp. Reply") at 5). The Government, on the other hand, argues that the doctrine should be constrained to First Amendment cases involving "pure speech," and should not extend to the Plaintiffs' challenge under the Petition Clause here, particularly given the lack of any allegation that "taxpayers will not bring their own claims under the Petition Clause . . . [or] that the statue [sic] has had a chilling effect on constitutionally protected speech." (Defs.' Supp. Opp'n at 15). On balance, Ryan, LLC has the better of this argument.

To begin with, the Supreme Court has described the right to petition as "intimately connected" with the First Amendment's other concomitant rights:

> [T]he rights to assemble peaceably and to petition for a redress of grievances are among the most precious of the liberties safeguarded by the Bill of Rights. These rights, moreover, are intimately connected, both in origin and in purpose, with the other First Amendment rights of free speech and free press. All these, though not identical, are inseparable.

*United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967) (internal quotation and citations omitted); *see also McDonald v. Smith*, 472 U.S. 479, 485 (1985) ("The Petition Clause . . . was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable . . . ."). In this Court's view, therefore, it reasonably follows that the more forgiving approach to prudential standing requirements developed in the Speech Clause context should logically extend to claims under the Petition Clause. Indeed, this result seems particularly appropriate given the Government's acknowledgement that "the right to petition and the right to free speech . . . are related and are

13

generally subject to the same constitutional analysis."   (Dkt. No. 10-1 ("Defs.' Mem.") at 7

(citing *Wayte v. United States*, 470 U.S. 598, 610 n.11)).   The Court also notes that at least one

leading constitutional treatise makes no distinction on this issue as between the various First

Amendment guarantees. 1 RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON

CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 2.13(f)(iii)(2), at 368 (5th ed. 2012) ("In

the First Amendment area, prudential barriers are lower.").

Along with these general parallels, the Court finds the Plaintiffs' allegations in this case

plausibly establish a danger of "chilled speech" sufficient to place this particular case within the

contours of *Munson.*   Taking the Complaint's allegations as true, as the Court must, Ryan, LLC

asserts that it has "lost clients and substantial revenue" due to Circular 230's revisions, which

means that clients who may have formerly filed "ordinary refund claims" are no longer doing so,

given their inability to compensate Ryan, LLC on a contingent basis.  *Munson*, 467 U.S. at 956-

57 (finding relaxation of the hindrance requirement appropriate where "the statute's very

existence may cause others not before the court to refrain from constitutionally protected speech

or expression").   The fact that Ryan, LLC's clients may not be exercising their right to pursue

refund claims, as Plaintiffs allege, at least raises the specter of chilled speech.  Given all this, the

Court finds that Ryan, LLC possesses standing to pursue its Petition Clause claim on behalf of its

third-party taxpayer clients.

Insofar as Ryan, LLC has standing to pursue its Petition Clause claim, the Court need not

(and does not) decide whether Mr. Ryan would independently have standing to pursue a Petition

Clause claim as well.   It is well settled that, to proceed to the merits of a claim, the Court "need

only find one party with standing." *Americans for Safe Access v. DEA*, 706 F.3d 438, 443 (D.C.

Cir. 2013); *see also Comcast Corp. v. FCC*, 579 F.3d 1, 6 (D.C. Cir. 2009) ("[I]f one party has

standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case.").

### C.  Mr. Ryan Lacks Standing To Pursue His Due Process Claim (Count II)

Turning to Count II of the Complaint, Mr. Ryan asserts that Circular 230's prohibition on the use of contingent fee compensation in connection with "ordinary refund claims" violates his rights under the Due Process Clause of the Fifth Amendment, which guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Both the Supreme Court and our Circuit have made clear that "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'liberty' or 'property.'"  *GE v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)); *Lepelletier*, 164 F.3d at 45 ("When presented with a due process challenge, a court must determine, first, whether there has been a deprivation of a property interest, and, if so, what process is due.") (internal citation omitted).  Thus, to ensure that Mr. Ryan meets Article III's injury-in-fact prong as to this claim, the Court must satisfy itself that the allegations of the Complaint plausibly establish that he was deprived of a protected property interest under the Due Process Clause.  On balance, the Court concludes that Mr. Ryan fails to make such a showing.

In reaching this conclusion, the Court begins with the allegations of the Complaint. Plaintiffs allege that Circular 230 infringes on Mr. Ryan's "due process right *to obtain a refund of taxes paid.*"  (Compl. at ¶ 1) (emphasis added).  Elsewhere in the Complaint, Mr. Ryan invokes his "*statutory right to obtain a refund for an overpayment of tax* pursuant to [Internal Revenue Code] §§ 6402(a) and 6511(a)."  (*Id.* ¶ 63) (emphasis added).  Based on these allegations, and Plaintiffs' repeated adherence to this theory in their briefs, the Court construes

15

Mr. Ryan's claimed injury as the deprivation of his property right to *file refund claims with the IRS*. (*See* Dkt. No. 13 ("Pls.' Opp'n") at 13 (describing the basis of Mr. Ryan's due process claim as the deprivation of his "protected property interest in filing refund claims"); Pls.' Supp. Mem. at 18 (identifying the applicable injury as an "impair[ment] of the statutory rights of taxpayers, including Mr. Ryan, to file refund claims"); Dkt. No. 23 ("Pls.' Supp. Reply") at 9 ("Mr. Ryan has properly alleged a deprivation of a protected property interests in the statutory right to file refund claims for the overpayment of taxes.")).  In this respect, the Court emphasizes that Plaintiffs do not contend that Circular 230 categorically bars taxpayers from filing "ordinary refund claims" altogether.  Nor could they.  Notwithstanding Circular 230's revised regulations, taxpayers still have the ability to file "ordinary refund claims" with the IRS—they can continue to file such claims on their own, without practitioner representation, and they can even continue to file such claims with the assistance of tax practitioners, so long as they are compensated on a non-contingent basis.  All that Circular 230 prohibits is a taxpayer's ability to compensate a tax practitioner for preparing or filing an "ordinary refund claim with "a fee that is based on a percentage of the refund reported on a return, that is based on a percentage of the taxes saved or that otherwise depends on the specific result attained."  31 C.F.R. § 10.27(c)(1).

Seemingly recognizing this, the constitutional deprivation Plaintiffs allege is more nuanced.  In essence, they assert that, because "ordinary refund claims" are complex and require a substantial outlay of time and effort, taxpayers cannot effectively pursue refund claims on their own; for all intents and purposes, Plaintiffs suggest, taxpayers need practitioner assistance to file such claims.  In turn, because some taxpayers may be unable to afford to pay a tax practitioner through anything but a contingent fee arrangement, Plaintiffs contend that Circular 230's prohibition on contingent fee compensation precludes some taxpayers from filing refund claims

with the IRS altogether.  (*See* Pls.' Supp. Mem. at 17-18) ("[B]ecause of the complexities of the tax laws and the cost-prohibitive nature of preparing and filing Ordinary Refund Claims, the use of contingent fee arrangements . . . reflects, in plain, practical terms, a means for taxpayers, such as Mr. Ryan, to pursue these often costly refund claims by sharing the expenses associated with the preparation and filing of these claims.").   Assuming without deciding that these circumstances amount to a constitutional due process violation—i.e., that the right to file a refund claim with the IRS is a protected property interest, and that Circular 230 unconstitutionally infringes upon that right—Mr. Ryan fails to allege an injury consistent with this theory.   Stated another way, despite the supposedly "complex" and "costly" nature of "ordinary refund claims," Mr. Ryan does not assert that his inability to retain a practitioner on a contingent fee basis has deprived him of the right or ability to pursue such a claim.  In fact, the plain allegations of the Complaint confirm precisely the opposite—Mr. Ryan "*has filed an Ordinary Refund Claim* since the effective date of the 2007 revisions to Circular 230."  (Compl. at ¶ 25) (emphasis added).

　　While the Court can perceive that some "taxpayers" could potentially fall victim to the type of injury articulated by Plaintiffs, Mr. Ryan is not plainly one of them.  This is because Plaintiffs assert that Circular 230 infringes upon taxpayers' due process right to *file refund claims*, but Mr. Ryan simply fails to establish that he has been injured in this manner.  At most, he pleads that he has been "unable to retain a practitioner on a contingent fee basis to prepare and file an Ordinary Refund Claim on his behalf."  (Compl. at ¶¶ 5, 52).  However, the ability to hire a practitioner on a contingent fee basis is *not* the protected property interest that Mr. Ryan seeks to vindicate—indeed, Plaintiffs expressly disclaim any such approach.  (Dkt. No. 17 ("Pls.' Surreply") at 1 ("Plaintiffs are not asserting a constitutional right to hire an attorney on a

contingent fee basis."); Pls.' Supp. Reply at 7 ("Mr. Ryan has never asserted an inability to hire a practitioner as a basis for his constitutional claims.")).  Given all this, Mr. Ryan's claimed injury, when measured against Plaintiffs' due process theory, is the type of "conjectural or hypothetical" injury too speculative to satisfy Article III's requirements.  *See, e.g.*, *Dominguez*, 666 F.3d at 1362-64; *Rodearmel v. Clinton*, 666 F. Supp. 2d 123, 131 (D.D.C. 2009) (three-judge court) (dismissing due process claim alleging deprivation of continued employment because, although plaintiff alleged intolerable working conditions that might eventually result in his forced resignation, he remained an employee at the time of suit, and therefore his allegations demonstrated "speculative" injury, at best, and not the "actual or imminent" injury necessary to establish Article III standing).

Seeking to avoid this outcome, Plaintiffs argue that the Court's concern "is really a question of whether the Circular 230 prohibition *sufficiently* impairs Mr. Ryan's right to file Ordinary Refund Claims" that "goes to the merits of Mr. Ryan's Due Process Clause claim and . . . should not be considered for purposes of determining standing."  (Pls.' Supp. Mem. at 18). But the Court is not passing on the merits of Mr. Ryan's claim.  Quite conversely, the Court assumes, as stated, that Mr. Ryan would prevail under Plaintiffs' theory on the merits—i.e., that the right to file refund claims is protected under the Due Process Clause, and that Circular 230 unconstitutionally infringes on such right.  (*See* Compl. at ¶¶ 61-66).  Despite these assumptions, Mr. Ryan's claim runs aground because his allegations fail to establish that he has suffered any cognizable injury consistent with this theory.  He does not allege that Circular 230 has rendered him unable to file or obtain a refund with the IRS.  (*Id.* ¶ 63).  In fact, he alleges precisely the opposite—that he has remained able to file refund claims despite Circular 230's restrictions on contingent fee compensation.  (*Id.* ¶ 25).  Far from a simply a matter of degree or a question as to

whether Mr. Ryan's rights were "sufficiently" impaired, as Plaintiffs seem to suggest, this distinction goes to the very heart of the property interest that Mr. Ryan alleges was infringed.

In sum, because Mr. Ryan fails to allege a sufficiently concrete and particularized injury that comports with his constitutional due process theory, the Court finds that he lacks Article III standing to pursue this claim.   Accordingly, Count II of Plaintiffs' Complaint is hereby dismissed for want of jurisdiction.

### D.  The Merits of Plaintiffs' Petition Clause Claim

#### 1.  <u>Standard of Review on Motion to Dismiss</u>

The Government moves to dismiss Plaintiffs' Petition Clause claim pursuant to Rule 12(b)(6).   FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In considering a Rule 12(b)(6) motion, the Court must construe a complaint "liberally in the plaintiffs' favor," and must "grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003).   However, the Court need not accept inferences that are "unsupported by the facts set out in the complaint," nor "legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).   Finally, in evaluating a Rule 12(b)(6) motion to dismiss, the Court properly considers "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

### 2.  **Plaintiffs Fail To State A Claim Under The Petition Clause**

The First Amendment to the Constitution guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  While infrequently litigated, the Supreme Court has recognized the right to petition as "one of 'the most precious of the liberties safeguarded by the Bill of Rights.'"  *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2003) (quoting *United Mine Workers*, 389 U.S. at 222).  Recently, the Supreme Court expressly reaffirmed that "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government."  *Borough of Duryea v. Guarnieri*, --- U.S. ---, 131 S. Ct. 2488, 2494 (2011) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984)).

Through Count I of their Complaint, Plaintiffs allege that, in prohibiting the use of contingent fee arrangements to prepare and file "ordinary refund claims," Circular 230 unconstitutionally impinges on their First Amendment petition rights.  (*See* Compl. at ¶¶ 1, 54-60).  In opposing the Government's Motion, Plaintiffs insist that they have stated a viable claim under the Petition Clause and contend that:

> [They] have sufficiently alleged that, given the technical complexities of the tax laws, the requirements imposed by the IRS on the content of refund claims and the enormous amount of time and effort necessary to prepare a proper refund claim, the prohibition on the use of contingent fee arrangements impairs and, in some cases, may extinguish, the ability of taxpayers to effectively petition the IRS for a refund of taxes that have been overpaid.

(Pls.' Opp'n at 8).  Ultimately, even accepting as true the well-pleaded allegations of Plaintiffs' Complaint, the Court concludes that Plaintiffs fail to state a plausible claim for relief under the First Amendment's Petition Clause.

In pressing for the dismissal of Plaintiffs' claim, the Government first argues that the Petition Clause does not protect "a taxpayer's right to file an administrative claim for refund" with the IRS.  (Defs.' Reply at 7).  The Court finds this proposition dubious.  Not only has the

Supreme Court explicitly held that Petition Clause guarantees citizens the ability to seek relief with courts, but it has also made clear that these protections extend to "other forums established by the government for the resolution of legal disputes." *Borough of Duryea*, 131 S. Ct. at 2494. The Court has also explained that "[t]he same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government." *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition."). Insofar as the Internal Revenue Service is an administrative agency established by the Government, the Court believes that the Petition Clause would protect citizens' rights to file claims with the IRS, as Plaintiffs suggest. On balance, however, the Court need not directly pass on this issue because, even assuming that the right to file a refund claim with the IRS does fall within the ambit of the Petition Clause's protections, Plaintiffs fail to allege any constitutionally cognizable violation or impingement of such a right.

To be sure, "the protections afforded by the First Amendment . . . are not absolute." *Virginia v. Black*, 538 U.S. 343, 358 (2003); *see also Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.*, 608 F.3d 110, 124 n.8 (1st Cir. 2011) ("The First Amendment protects an individual's right to petition . . . but that right is not absolute."); *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1458 (4th Cir. 1996) (similar); *Wright v. DeArmond*, 977 F.2d 339, 347 (7th Cir. 1992) (similar); *U.S. Postal Serv. v. Hustler Magazine, Inc.*, 630 F. Supp. 867, 872 (D.D.C. 1986) ("While the right to petition Government is among the most precious of the liberties safeguarded by the Bill of Rights, we recognize that this right, like many rights, is not absolute but can be subject to reasonable limitations."). In the Government's view, therefore,

21

Circular 230's impact on taxpayers' ability to file refund claims with the IRS, if any, falls well within the permissible bounds of the Government's ability to regulate potential First Amendment conduct.  Under the revised regulations of Circular 230, taxpayers remain free to file "ordinary refund claims" with the IRS.  (*See* Compl. at ¶¶ 23, 25, 47).  Taxpayers remain free to retain a tax practitioner to assist them in the preparation and filing of such claims.  (*See id.*).  And taxpayers also remain free to compensate tax practitioners for such claims.  The only limitation that Circular 230's revised regulations place on taxpayers is this: if taxpayers choose to file an "ordinary refund claim," and if taxpayers choose to retain a tax practitioner to assist them in the preparation and filing of such a claim, then they cannot compensate the practitioner on a contingency fee basis.  The Court agrees that this minor limitation on proceedings before the IRS does not run afoul of the Petition Clause.

The Government compares the Plaintiffs' claim in this case to an issue presented in *United States v. Harriss*, 347 U.S. 612 (1954), which involved a challenge to the Federal Regulation of Lobbying Act on First Amendment grounds.  The *Harriss* Court held, in relevant part, that a statute requiring lobbyists to register with Congress and to make specific disclosures did not violate the plaintiff's First Amendment petition rights; rather, those discrete regulations, which simply allowed Congress to "know who is being hired, who is putting up the money, and how much" so that it could "maintain the integrity of a basic governmental process," were found to be permissible under the First Amendment.  *Id.* at 625.  Relatedly, says the Government, Circular 230 does not categorically prohibit taxpayers from pursuing claims with the IRS, even with representation.  It simply limits the compensation structure in connection with any such representation, "to discourage tax return positions that exploit the audit selection process." (Defs.' Mem. at 3; *see also* Compl. at ¶¶ 38-39).  While certainly not on all fours with this case,

the Court agrees that some reasonable parallels can be drawn from the *Harriss* decision.  Both cases involve discrete, limited restrictions on a party's ability to petition the government, and in both cases those restrictions were driven by the same essential objective: "to maintain the integrity of a basic governmental process." *Harriss*, 347 U.S. at 625.

Plaintiffs, on the other hand, rely heavily on the Montana Supreme Court's decision in *Montana Auto Ass'n v. Greely*, 632 P.2d 300 (Mont. 1981).  But that decision does not dictate a different result.  There, the Montana Supreme Court struck down as unconstitutional portions of a state ballot initiative that amended Montana's Lobbying Act.  More specifically, the court— through a single paragraph of analysis—voided provisions that completely prohibited the compensation of lobbyists through contingent fee arrangements because the provisions did not distinguish between contingent arrangements that were "properly motivated," as against those that were "improperly motivated." *Id.* at 393.  As the Government rightly points out, the restrictions invalidated in *Greely* are plainly distinguishable from the challenged provisions of Circular 230, which do not impose a blanket prohibition on contingent fee arrangements in proceedings before the IRS.  Rather, the applicable regulations permit the use of contingency fees in proceedings where the Service "first take[s] an initial action such as challenging a taxpayer position, commencing an examination, or making an assessment of penalties or interest." (Defs.' Mem. at 2-3; *see also* Compl. at ¶ 40).  Thus, Circular 230 prohibits contingent compensation only in certain circumstances—as relevant here, in connection with "ordinary refund claims."   Moreover, the Government adopted the revised regulations "to discourage tax return positions that exploit the audit selection process," (Defs.' Mem. at 3), which reflects an effort on the Government's part to separate "properly motivated" contingent arrangements from those that are "improperly motivated," which was precisely the concern identified in *Greely*.

Thus, the Court finds the Plaintiffs' reliance on that decision unavailing, and to the extent its holding is not distinguishable from the instant matter, the Court disagrees with its (cursory) analysis for the reasons stated herein.

Accordingly, because the Court finds that Plaintiffs fail to state a cognizable claim for relief under the Petition Clause of the First Amendment, Count I of Plaintiffs' Complaint will be dismissed under Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Court concludes that Mr. Ryan lacks Article III standing to pursue his claim under the Due Process Claim and therefore **DISMISSES** Count II of Plaintiffs' Complaint for lack of jurisdiction.  In addition, the Court find that Plaintiffs fail to state a claim under the Petition Clause and therefore **DISMISSES** Count I pursuant to Federal Rule 12(b)(6). Accordingly, the Government's Motion to Dismiss Counts I and II is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.  Count III of Plaintiffs' Complaint, however, brought by Mr. Ridgely pursuant to the APA, shall proceed.  An appropriate Order accompanies this Memorandum Opinion.

Date:  March 29, 2013

_____
ROBERT L. WILKINS
United States District Judge