**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**GERALD LEE RIDGELY, JR.,**

    Plaintiff,

    v.

**JACOB J. LEW, et al.,**

    Defendants.

Civil Action No. 1:12-cv-00565 (CRC)

**MEMORANDUM OPINION**

To prevent "exploit[ation of] the audit selection process," the Internal Revenue Service ("IRS") in 2007 prohibited a broad range of tax practitioners from charging contingent fees for certain services relating to preparing, filing, or presenting tax returns or refund claims. 31 C.F.R. § 10.27. Plaintiff Gerald Lee Ridgely, Jr., a practicing CPA, brought suit against the Secretary of the Treasury and the Commissioner of the IRS in their official capacities, arguing that the IRS[1] exceeded the scope of its statutory authority in regulating the preparation and filing of "Ordinary Refund Claims"—refund claims that practitioners file after a taxpayer has filed his original tax return but before the IRS has initiated an audit of the return. Ridgely and the IRS cross-moved for summary judgment. Concluding that the IRS lacks statutory authority to regulate the preparation and filing of Ordinary Refund Claims, the Court grants Ridgely's Motion.

**I.    Background**

As most taxpayers know, the process of preparing, filing, and (in some cases) adjudicating tax returns can be complicated. So before examining the merits of this case, the

---

[1] This Opinion refers to the Department of the Treasury and its bureau, the IRS, interchangeably.

1

Court will provide some background on how taxpayers interact with the IRS and how the IRS treats the "Ordinary Refund Claims" at issue in this case.

### A. Process for Preparing and Filing Refund Claims

Taxpayers proceed through three stages of interaction with the IRS: assessment and collection, examination, and appeals. United States v. Galletti, 541 U.S. 114, 122 (2004). "Assessment" refers to the "calculation of a recording of a tax liability" following a taxpayer's submission of his return. Id. Although the IRS accepts most taxpayers' returns as filed, it selects some returns for examination, or audit. Id.; 26 C.F.R. § 601.103(b). During the examination stage, which may take place by mail or in-person, "a taxpayer may be represented before the examiner by an attorney, certified public accountant, or other representative." 26 C.F.R. § 601.105(b)(1). After the examination, the IRS may determine that the taxpayer owes additional tax or that the IRS owes a refund to the taxpayer. Finally, if the taxpayer and IRS disagree over the IRS's disposition, the taxpayer may request an in-person conference with the IRS's appeals office, during which he may designate a representative to act on his behalf. 26 C.F.R. §§ 601.103(b), (c)(1)-(3); 601.106(c). A taxpayer may then seek review in court. 26 C.F.R. § 601.103(c).

This case concerns the preparation and filing of the so-called "Ordinary Refund Claim," a procedure that a taxpayer may undertake if he determines that he has overpaid his taxes. A taxpayer may file this type of claim after he has filed his tax return or during the course of an examination, but prior to filing suit in court for a refund. I.R.C. § 7422(a). In his claim, a taxpayer must detail the exact basis for the refund. Treas. Reg. 301.6402-2(b)(1). Should the IRS disallow his claim, the taxpayer may appeal. I.R.C. § 6532(a). Particularly if the refund claim is complex, a taxpayer may elect to hire a CPA to help prepare and file his claim.

Before proceeding any further, the Court must explain exactly what actions constitute "preparing and filing" an Ordinary Refund Claim. As Ridgely's counsel made clear during the hearing on the parties' summary judgment motions, a CPA may assist a taxpayer in preparing and filing a refund claim and, in doing so, would not be legally representing the taxpayer until the IRS responds to the claim and the CPA submits a power-of-attorney form to the IRS. Hearing Tr. at 14. Thus, what Ridgley challenges here is the IRS's proclaimed authority to regulate fee arrangements entered into by CPAs for preparing and filing Ordinary Refund Claims *before* the commencement of any adversarial proceedings with the IRS or any formal legal representation by the CPA.

### B. Statutory and Regulatory Framework

This case concerns the breadth of the IRS's authority to regulate CPAs, which is found in 31 U.S.C. § 330, a statute originally enacted in 1884. Pursuant to Section 330, the Treasury Secretary has authority to regulate "persons" who practice before the Treasury Department. In relevant part, Section 330 states:

> (a) Subject to section 500 of title 5, the Secretary of the Treasury may –
>     (1) regulate the practice of representatives of persons before the Department of the Treasury; and
>     (2) before admitting a representative to practice, require that the representative demonstrate –
>         (A) good character;
>         (B) good reputation;
>         (C) necessary qualifications to enable the representative to provide to persons valuable service; and
>         (D) competency to advise and assist persons in presenting their cases.
> (b) After notice and opportunity for a proceeding, the Secretary may suspend or disbar from practice before the Department, or censure, a representative who –
>     (1) is incompetent;
>     (2) is disreputable;
>     (3) violates regulations prescribed under this section; or
>     (4) with intent to defraud, willfully and knowingly misleads or threatens the person being represented or a prospective person to be represented.
>     . . .

3

(d) Nothing in this section or in any other provision of law shall be construed to limit the authority of the Secretary of the Treasury to impose standards applicable to the rendering of written advice with respect to any entity, transaction plan or arrangement, or other plan or arrangement, which is of a type which the Secretary determines as having a potential for tax avoidance or evasion.

Pursuant to this statutory authority, the Secretary of the Treasury publishes regulations governing "practice" before the IRS in the Code of Federal Regulations, Title 31, part 10. These regulations are commonly known as "Circular 230." Most of Circular 230 outlines duties and restrictions concerning "practice" before the IRS as they relate to practitioner character, reputation, and competency. See 31 C.F.R. §§ 10.20-.38. The IRS has applied these regulations to attorneys, CPAs, and other specified tax professionals. See 31 C.F.R. § 10.3 (2009). Beginning in 1994, Circular 230 prohibited the use of contingent fee arrangements for preparing original income tax returns, but allowed such arrangements in the context of preparing an amended return or a claim for a refund.

In 2007, after a period of notice and comment, the IRS promulgated regulations prohibiting the charging of contingent fees except in limited circumstances. Specifically, Section 10.27(a)-(b) of Circular 230 provides:

> (a) *In general.* A practitioner may not charge an unconscionable fee in connection with any matter before the Internal Revenue Service.
> (b) *Contingent fees—*
> > (1) Except as provided in paragraphs (b)(2), (3), and (4) of this section, a practitioner may not charge a contingent fee for services rendered in connection with any matter before the Internal Revenue Service.
> > (2) A practitioner may charge a contingent fee for services rendered in connection with the Service's examination of, or challenge to—
> > > (i) An original tax return; or
> > > (ii) An amended return or claim for refund or credit where the amended return or claim for refund or credit was filed within 120 days of the taxpayer receiving a written notice of the examination of, or a written challenge to the original tax return.
> > (3) A practitioner may charge a contingent fee for services rendered in connection with a claim for credit or refund filed solely in connection with the determination of statutory interest or penalties assessed by the Internal Revenue Service.

> (4) A practitioner may charge a contingent fee for services rendered in connection with any judicial proceeding arising under the Internal Revenue Code.

Section 10.27 defines "matter before the Internal Revenue Service" to include "tax planning and advice, preparing or filing or assisting in preparing or filing returns or claims for refund or credit, and all matters connected with a presentation to the Internal Revenue Service or any of its officers or employees relating to a taxpayer's rights, privileges, or liabilities." Circular 230 § 10.27. The provision therefore encompasses preparers of refund claims who "appear" before the IRS only when they prepare and/or file refund claims. With this statutory and regulatory framework in mind, the Court now turns to the particular facts of this case.

### C. Factual and Procedural History

The IRS promulgated the contingent fee restrictions at issue in this case out of concern about auditor independence. IRS Reply [Dkt. No. 40] at 15 (arguing that CPA practice of "taking lucrative contingent fees from companies whose books they review . . . jeopardizes auditor independence because it leads accountants and their clients to share financial interests" (internal quotation marks omitted)). The plaintiff in this case, Gerald Ridgely, is a practicing CPA. Amend. Compl. [Dkt. No. 31] ¶ 10. Required to comply with 10.27's restrictions on contingent fee arrangements, Ridgely argues that he has suffered a "loss of clients and significant revenue," Ridgely Reply [Dkt. No. 37] at 23, and that his "ability to represent and assist clients in the preparation and filing of Ordinary Refund Claims and to practice before the IRS has been severely restricted," Amend. Compl. ¶ 26. Seeking injunctive and declaratory relief, Ridgely sued the Secretary of the Treasury and the Commissioner of the IRS under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-

2202. This Court previously determined that Ridgely has standing. Mar. 29, 2013 Order [Dkt. No. 26].[2] Both parties now move for summary judgment.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56, the court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). But this general standard does not apply to the court's review of an administrative decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq., which requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C); see Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006). In an APA case, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Sierra Club, 459 F. Supp. 2d at 90 (citation omitted). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Id. (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

The court reviews APA claims under the familiar two-step Chevron standard. Ass'n of Private Sector Colls. & Univs. v. Duncan, 681 F.3d 427, 441 (D.C. Cir. 2012) (citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984)). The court first uses the traditional tools of statutory interpretation to determine "whether Congress has directly spoken to the precise question at

---

[2] The Court also dismissed two plaintiffs and two counts of the Complaint for lack of jurisdiction and failure to state a claim. Mar. 29, 2013 Order.

issue." Chevron, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842–43. "[I]f the statute is silent or ambiguous with respect to the specific issue," the court proceeds to step two, asking whether the agency's interpretation "is based on a permissible construction of the statute." Id. at 843. The agency's construction at step two is permissible "unless it is arbitrary or capricious in substance, or manifestly contrary to the statute." Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 711 (2011) (citation omitted).

**III.    Analysis**

Section 330(a) authorizes the Secretary of the Treasury to "regulate the practice of representatives of persons before the Department of the Treasury." 31 U.S.C. § 330(a)(1).[3] As both parties recognize, however, Congress "nowhere defined the meaning or scope of the term 'practice' before the Treasury Department." IRS's Mot. [Dkt. No. 35] at 15; see Ridgely Mot. [Dkt. No. 34-1] at 21. Ridgely argues that the plain text of the statute and its surrounding context reveals that the IRS's authority is limited to regulating "practice," and the preparation and filing of Ordinary Refund Claims does not constitute "practice" because such claims, by definition, precede agency adjudication. Ridgely Mot. at 20–21. The IRS, by contrast, insists that "nothing in the term 'practice' suggests that the term excludes the fees charged by representatives for preparing and filing refund claims which, by their very nature, relate to a taxpayer's liabilities." IRS Mot. at 15. At Chevron step one, then, this case boils down to the following question: does Section 330 unambiguously foreclose the IRS's interpretation that

---

[3] The parties have not raised, and the Court expresses no view on, the IRS's authority to issue and enforce standards of practice by representatives under other subsections.

7

CPAs act as "representatives" who "practice" before the IRS when they prepare and file Ordinary Refund Claims?

In determining whether statutory language is ambiguous, the Court must examine "the language [of the statute] itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). Armed with the traditional tools of statutory interpretation—"text, structure, purpose, and legislative history," Pharm. Research & Mfrs. of Am. v. Thompson, 251 F.3d 219, 224 (D.C. Cir. 2001)—the Court's task is to determine "whether the agency has stayed within the bounds of its statutory authority." City of Arlington v. FCC, 133 S. Ct. 1863, 1868 (2013) (emphasis omitted).

This Court, however, is not the first to venture down this particular rabbit hole. Earlier this year, in Loving v. IRS, 742 F.3d 1013 (D.C. Cir. 2014), the D.C. Circuit grappled with the question of "whether the IRS's authority to 'regulate the practice of representatives of persons before the Department of the Treasury' encompasses authority to regulate *tax-return preparers*," Loving, 742 F.3d at 1016 (emphasis added), whom the Court in turn defined as persons who "'prepare[] for compensation, or who employ[] one or more persons to prepare for compensation, all or a substantial portion of any return of tax or any claim for refund of tax under the Internal Revenue Code,'" id. (quoting 26 C.F.R. § 301.7701-15(a)). The Court held that the text, history, structure, and context of Section 330 "foreclose[d] and render[ed] unreasonable" the IRS's interpretation of Section 330. Id. at 1022. In other words, the IRS's interpretation failed at both Chevron step 1 and Chevron step 2. Id.

As the IRS is quick to point out, though, Loving involved a different set of plaintiffs—non-CPA tax-return preparers—and different provisions of Circular 230—Sections 10.3-10.6, which imposed requirements to pay a fee, pass a qualifying exam, and complete continuing

education classes. See Loving, 742 F.3d at 1015. But Loving also expressly addressed two key questions that the Court faces here: who are "representatives" and what is "practice" under Section 330? In the Court's view, Loving is controlling precedent that must guide the Court's examination of Section 330's text, context, and history with respect to the claims at issue in this case.

### A. Text of Section 330

The plain text of Section 330(a) limits the regulatory authority of the Secretary of the Treasury to "the practice of representatives of persons before the Department of the Treasury." 31 U.S.C. 330(a)(1). As the Loving court explained, two terms in this provision are key: "representative" and "practice." To fall under Section 330's purview, the regulated conduct must be "practice" and must be undertaken by a "representative."

As to the meaning of the term "representative," Loving is clear: a "representative" is traditionally one "with authority to bind others." 742 F.3d at 1016. Tax-return preparers neither "possess legal authority to act on the taxpayer's behalf" nor can they "legally bind the taxpayer by acting on the taxpayer's behalf." Id. at 1017. They are, as a result, "not agents." Id. As mentioned earlier, the Loving court defined "tax return preparers" to expressly *include* those preparing refund claims, but even if the court's holding fails to directly cover CPAs preparing and filing Ordinary Refund Claims, the court's reasoning applies straightforwardly. CPAs preparing and filing such claims before possessing any power of attorney possesses no "legal authority to act on behalf of taxpayers." Id. at 1017. In Loving's words, these individuals merely "assist[]" the taxpayer. Id. Thus, Section 330's use of the term "representative" excludes refund claim preparers, just as it did tax-return preparers in Loving.

9

Loving also sheds light on the meaning of the term "practice" in Section 330. As the Court explained, "practice . . . before the Department of the Treasury," like practice before any agency or court, "ordinarily refers to practice during an investigation, adversarial hearing, or other adjudicative proceeding." Id. at 1018. The process of filing an Ordinary Refund Claim—again, before any back-and-forth with the IRS—is similar to the process of filing a tax return in that both take place prior to any type of adversarial assessment of the taxpayer's liability. If a "tax-return preparer do[es] not practice *before the IRS* when [he] simply assist[s] in the preparation of someone else's tax return," then a CPA hardly "practices" before the IRS when he simply prepares and files a taxpayer's refund claim, before being designated as the taxpayer's representative and before the commencement of an audit or appeal. Id. at 1018. Following Loving, the Court therefore concludes that the plain text of Section 330 excludes preparers and filers of Ordinary Refund Claims from the ambit of the IRS's regulatory authority.

## B. Context of Section 330

Like its plain text, Section 330's broader statutory context leads the Court to conclude that the IRS's regulatory authority does not extend to those preparing and filing Ordinary Refund Claims. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Roberts v. Sea-Land Servs, Inc., 132 S. Ct. 1350, 1357 (2012) (internal quotation marks omitted). But heeding the IRS's interpretation of Section 330 would "effectively gut" Congress's "carefully articulated" framework for regulating those preparing and filing tax returns and tax refund claims. Loving, 742 F.3d at 1020. This framework includes a number of statutes that deal particularly with individuals preparing tax returns or refund claims. To start, 26 U.S.C. § 7701 expressly defines "tax return preparer" to include individuals who prepare tax returns *or* tax

refund claims. 26 U.S.C. § 7701(a)(36). Beyond grouping tax-return preparers and tax-refund preparers in the same statutory definition, Congress enacted a comprehensive scheme of penalties to curb the potential for abuse in the preparation and filing of *both* original returns and refund claims. See 26 U.S.C. §§ 6662, 6663, 6676, 6694, 6701, 7206, and 7207 (penalizing filing frivolous claims for refunds, inaccurate reporting, fraud, understatements due to unreasonable positions, willful or reckless conduct, aiding and abetting understatements of tax liabilities, willfully aiding or assisting in the preparation of fraudulent or false claims, and willfully delivering fraudulent or false returns to the IRS). These provisions reveal that Congress conceived of tax-return preparation and tax-refund preparation as similar activities that qualitatively differ from the "practice" of presenting or adjudicating cases. But under the IRS's view, these specific provisions would serve no purpose, for Section 330 itself would have given the IRS liberal authority to impose various penalties on tax-return preparers who behave unethically. See Loving, 742 F.3d at 1020. The definition of "tax return preparer" and the need to avoid surplusage support the conclusion that Congress differentiated between the preparation and filing of refund claims on the one hand and their subsequent adjudication on the other. Congress clearly intended to allow the IRS to regulate these two categories of activity differently, and the grant of authority in Section 330 is limited to the latter.

### C. History of Section 330

The history of Section 330 also indicates that the statute's scope never encompassed the mere preparation and filing of refund claims. The original language of Section 330 stated:

> [T]he Secretary of the Treasury may prescribe rules and regulations governing the recognition *of agents, attorneys, or other persons representing claimants before his Department*, and may require of such persons, agents and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good character and in good repute, possessed of the necessary qualifications to enable them to

11

> render such claimants valuable service, and *otherwise* competent to advise and assist such claimants *in the presentation of their cases*.

Act of July 7, 1884, ch. 334, sec. 3, 23 Stat. 258, 258–59 (emphasis added). As Loving noted, Congress's use of "the words 'agents,' 'attorneys,' 'claimants,' 'otherwise,' and 'presentation of their cases' in the original version of the statute" and Congress's statement "in the statute itself that it intended no change in meaning when it streamlined the statute in 1982" demonstrates that "the statute contemplates representation in a contested proceeding." 742 F.3d at 1020. Because a CPA prepares and files an Ordinary Refund Claim *before* becoming a legal representative and presenting his case, preparing and filing such claims is not within the scope of the actions originally targeted by Section 330.

### D. IRS's Counter-Arguments

The IRS offers only one non-conclusory argument in response to the Court's statutory interpretation as guided by Loving: that because Ridgely is a CPA, he "is a representative who practices before the Department and is therefore subject to the terms of Circular 230." IRS Mot. [Dkt. No. 35-1] at 25. In other words, according to the IRS, it has authority to regulate *all* actions of CPAs who—at some point—"practice" before it, regardless of "whether they're acting in a representational or non representational capacity." Hearing Tr. at 26. This argument, however, poses three problems. First, it is inconsistent with the use of the word "practice" in Section 330. The statute does not regulate "practitioners" generally; it regulates a specific kind of activity they may undertake: "practice . . . before the [IRS]." 31 U.S.C. § 330(a)(1). Second, the IRS's position would read the word "representative" out of Section 330. As Loving made clear, Section 330 only applies to individuals when they *represent* taxpayers. Third, adhering to the IRS's position would lead to absurd results. According to the IRS, it could broadly regulate the actions of CPAs no matter what they were doing—even if their conduct was nowhere close to

"practicing" before IRS—simply because, say, the CPAs "practiced" before the IRS once a year. Meanwhile, the IRS would impose no contingent fee restrictions on the preparation and filing of Ordinary Refund Claims by non-CPAs and those who never "practice" before the IRS. Nothing in the statutory text (or, for that matter, the context and history of Section 330) gives the IRS this kind of authority over CPAs specifically. Further, nothing in Section 10.27 indicates that the IRS was concerned with CPA conduct in particular instead of with the ethics of fee arrangements for preparation and filing generally. The Court therefore disagrees with the IRS that simply because CPAs may *at times* practice before the IRS, the IRS has authority to regulate their conduct without limit.

The IRS's remaining arguments have been foreclosed by Loving. For example, the IRS argues that it has "inherent authority" to regulate those that practice before it. IRS Mot. [Dkt. No. 35] at 10. But as Loving held, the IRS's regulatory authority is expressly circumscribed by Section 330. 742 F.3d at 1014–16. The IRS also argued for the first time at the hearing that Section 330(d) broadly authorizes the IRS to regulate those preparing and filing Ordinary Refund Claims regardless of the capacity in which they act. Hearing Tr. at 26. But the IRS never explained how Section 330(d), which concerns "the rendering of written advice," encompasses preparing or filing refund claims prior to formal legal representation. 31 U.S.C. § 330(d). If "written advice" included such acts, it would also include preparing and filing tax returns, a possibility foreclosed by Loving. In any event, as the Court has explained, the plain text, context, and history of Section 330 paint a clear picture of the scope of the IRS's authority with respect to the preparation and filing of Ordinary Refund Claims. That clarity cannot be eclipsed by brief, thinly supported references to ambiguous statutory language, the relevance of which the IRS never really explains.

13

Finally, the IRS hangs its hat on step 2 of the Court's Chevron inquiry. But, because the Court has concluded that the traditional tools of statutory interpretation unambiguously foreclose the IRS's interpretation—that is, the regulation fails Chevron step 1—the Court need not analyze the regulation under Chevron step 2.

**E. Permanent Injunction**

Ridgely seeks both declaratory and injunctive relief, both of which the Court deems appropriate here. In terms of the former, Ridgely seeks the Court's declaratory judgment that the IRS lacked statutory authority to promulgate contingent fee restrictions on those preparing and filing Ordinary Refund Claims pursuant to Section 10.27 of Circular 230. In terms of the latter, Ridgely asks the Court to permanently enjoin the IRS from enforcing this regulation. The Court employs a four-factor test to determine whether to issue an injunction, examining whether (1) the plaintiff has suffered an irreparable injury; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) a permanent injunction would not disserve the public interest. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Ridgely has satisfied all four prongs of this test. The Court finds that Ridgely's asserted loss of clients and income as a result of Circular 230's restriction, see Amend. Compl. ¶ 10; Ridgely Reply at 23, is an irreparable injury that no remedy at law would adequately compensate. See Nat'l Mining Ass'n v. Army Corps of Eng'rs, 145 F.3d 1399, 1408–09 (D.C. Cir. 1998). The Court also concludes that the balance of hardships tips in Ridgely's favor, as the IRS's regulatory scheme is invalid and Ridgely has suffered financial loss. Finally, a permanent

injunction would serve the public interest because of Section 10.27's invalidity.  The Court will therefore grant Ridgely's request for permanent injunctive relief.

**IV.     Conclusion**

For the foregoing reasons, the Court will grant Ridgely's Motion for Summary Judgment and deny the IRS's Motion for Summary Judgment. The Court will issue a separate Order consistent with this Opinion.


Date:   July 16, 2014

CHRISTOPHER R. COOPER  
United States District Judge