UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


GERALD LEE RIDGELY, JR.,        :
                               :
            Plaintiff,         :        Docket No. CA 12-565
                               :
     vs.                       :        Washington, D.C.
                               :        Tuesday, June 17, 2012
DOUGLAS H. SHULMAN, et al., :            10:05 a.m
                               :
            Defendants.        :
---------------------------x


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE CHRISTOPHER R. COOPER
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:          CHRISTOPHER S. RIZEK, Esquire
                            PETE LOWY, Esquire
                            Caplin & Drysdale
                            One Thomas Circle, NW
                            Suite 1100
                            Washington, DC 20005

For the Defendants:         E. CHRISTOPHER LAMBERT, Esquire
                            GEOFFREY J. KLIMAS, Esquire
                            U.S. Department of Justice
                            Tax Division
                            P.O. Box 227
                            Ben Franklin Station
                            Washington, DC  20044

Court Reporter:             CRYSTAL M. PILGRIM, RPR
                            Official Court Reporter
                            United States District Court
                            District of Columbia
                            333 Constitution Avenue, NW
                            Washington, DC  20001

```
 1                      P-R-O-C-E-E-D-I-N-G-S
 2            THE DEPUTY CLERK:  Civil case number 12-565, Gerald
 3   Lee Ridgely versus Douglas H. Shulman, et al.
 4            Counsel, would you please come forward and identify
 5   yourselves for the record.
 6            MR. RIZEK:  Chris Rizek from Caplin and Drysdale here
 7   in Washington.  With me at counsel table is my colleague, Pete
 8   Lowy, L-O-W-Y and General Counsel for Ryan, LLC Mr. Greg Weiss.
 9            THE COURT:  Mr. Rizek, good morning.
10            MR. LAMBERT:  Good morning, Your Honor, Christopher
11   Lambert for the United States on behalf of the defendants.  And
12   with me at counsel table is Attorney Geoffrey Klimas, U.S.
13   Department of Justice.
14            THE COURT:  How's your eye?
15            MR. LAMBERT:  It's on the upswing, thank you, Your
16   Honor.
17            MR. KLIMAS:  Don't shake his hand.
18            THE COURT:  I will not.
19            Good to see you all this morning.  Since the briefing in
20   this case in the D.C. Circuit is obviously withheld the
21   injunction in the Loving case.  As you probably gathered from
22   the minute order that we entered I'm interested to hear your
23   thoughts on that and how it effects this case.  I think at
24   bottom the question is whether the activities that the
25   plaintiffs seek to conduct here are they distinguishable at all
```

1    from the conduct that was discussed in Loving; that is, the

2    preparation of tax returns and if so whether those distinctions

3    matter at all in light of the six factors that were discussed

4    in Loving.

5        I suppose the question is whether the preparation of

6    original refund claims already falls within the Loving

7    injunction and I would be interested to know if the service is

8    presently enforcing Circular 230 as it relates to contingency

9    fees for the preparation of original refund claims.

10        Mr. Rizek, do you want to start us off?

11        MR. RIZEK:  Yes, sir.  Thank you, Your Honor.

12    The courts --

13        THE COURT:  Mr. Rizek, let me ask at the outset.  We

14    did not get a notice of supplemental authority regarding the

15    D.C. Circuit opinion.  Is there a reason for that?

16        MR. RIZEK:  Yes, there is.  I actually have a draft

17    of it right here, Your Honor, which counsel and I were about to

18    drop the day or day before of your minute entry because I had

19    just gotten fully up to speed on all of the briefing.  And we

20    realized that the Court hadn't formally been notified of that,

21    although I was confident the Court realized that it had been

22    noticed, all you have to do is read the case law.  But I

23    actually have a draft of it, and the reason we didn't was

24    because of that.

25            THE COURT:  We beat you to it.

```
1           MR. RIZEK:  You beat me to it, Judge, and then we go

2    busy rescheduling the hearing.  When the Court entered its

3    minute entry, I think all the four questions that the Court

4    asked about the impact of Loving are essentially Chevron Step

5    One questions and I would be happy to address each of them in

6    turn.  I do want to note just before we start for the Court's

7    benefit since we're updating things here.

8      Last week Circular 230 was modified in a couple of

9    respects that don't relate directly to this matter, Section 10

10   127 was not amended, but in Thursday June 12 Schedule Register

11   there's some changes in other provisions, so if we happen to

12   talk about other provisions here you might want to double check

13   that and I think I'll try to call those to the Court's

14   attention if I can recall.

15           Obviously our position in respect to the Court's first

16   question whether Loving controls here, is that it does for the

17   obvious reasons that it's the exact same statute.  It holds

18   Loving that the statute applies to representation of persons in

19   practice i.e. adversary proceedings which are not amended

20   returns or ordinary refund claims.  So its holding that their,

21   the adversary return is not an activity within the regulatory

22   gambit of the statute.  And the IRS I think is correctly

23   addressed here.

24           And the distinctions that the Government may draw I

25   think fall into two categories which were briefed albeit not
```

1 directly in these terms by the parties previously, and I think

2 the first one is the question the Court just asked whether

3 there's any substantive difference between preparation of

4 ordinary refund claims and preparation of the returns that were

5 the subject of the Loving case.

6      We would submit that there is no such difference.

7      THE COURT:  Mr. Rizek, it would be helpful if you

8 could take me through the process of the preparation and filing

9 of your briefs on the original refund request.  I'm inclined to

10 agree with you at the outset, but my question is does that

11 process ever become adversarial such that it would be consumed

12 within the Loving definition of practice?

13      MR. RIZEK:  Certainly, Your Honor.

14      THE COURT:  And whether at any point does the

15 preparer or the accountant involved become a representative or

16 agent of the taxpayer as defined by Loving?

17      MR. RIZEK:  Right, and that second point let me

18 address last because I do think that's a slightly different

19 argument.  But with respect to the first point, first of all as

20 a matter of law, an amended return, a refund claim, an ordinary

21 refund claim is ordinarily filed on an amended return.  It says

22 on the regulations of the forms and there are many reasons why

23 taxpayers will file an amended return.  Sometimes believe it or

24 not they report additional income.  Sometimes they want to

25 avoid penalties because they think an audit is coming, there's

1  a provision in the regulation under 6664 for that it's all

2  qualified amended return by fixing your problem in advance.

3      Recently there have been hundreds, thousands of

4  taxpayers who have come in under voluntarily disclosure

5  programs with foreign bank accounts to disclose additional

6  income and so there's lots of reasons to file amended returns.

7      Typically what we're talking about here however is amended

8  returns that claim refunds and they are defined for purposes of

9  argument here in pleadings as after the original return is

10  filed, but before an examination has commenced we call them

11  ordinary refund claims in the pleadings, and the circumstance

12  there --

13      THE COURT:  Is the taxpayer on notice that an

14  examination is about to commence or no?

15      MR. RIZEK:  Not technically, no, sir.  They haven't

16  received a notification from the service.  But most forfeit

17  (sic) clients for example, are routinely audited in 2, 3, 4

18  year cycles.  Recently the service has done it in two year

19  cycles.

20      So say you file let's say your 2012 return in September

21  of 2013 and it's now 2014, you may go to your accountant say

22  hey, we were looking at our yearend financials or something.

23  We may have some additional expense in that category or we may

24  have something that needs amendment.  Should we do a refund

25  claim because we're probably going to get audited on it any how

1    in a year or two.  That is typically what Ryan LLC does, they

2    help taxpayers find additional deductions and credits and tax

3    debits generally that they didn't claim the first time around

4    in reviewing their returns.  They will then advise the taxpayer

5    there are nominally a return prepared by virtue of the fact

6    that the return preparer definition in the Internal Revenue

7    Code in 7701 Section in reg that statute 7701 836 and I think

8    the statute is, the reg is 7701-15 if I remember correctly.

9        They will say you need to correct timing issues,

10   claiming additional benefits whatever.  Why don't we help you

11   do an amended return for an ordinary refund claim before the

12   audit and it will flag the issue for the service.  The 6402

13   regs require the refund claim to state the basis for the refund

14   and the facts sufficient to support it, flag the issue for the

15   IRS is the short way of saying it.  And indeed, if one looks at

16   the case law on whether a refund claim is sufficient, there's a

17   theory that a refund claim -- excuse me -- this Court wouldn't

18   have jurisdiction over refund suit unless a refund claim had

19   been made first.  That's right in the statute 7422 and the

20   question is whether that refund claim is adequate enough.

21       The case law under that will generally hold that so long

22   as the service had notice of the nature of the issue that

23   refund claim will be sufficient for variance purposes.  It

24   won't be a variance between refund claim the lawsuit.  So it

25   has to do that and then any number of things can happen.

1    The service can grant it immediately.  The service can

2  audit it.  The service can ignore it.  Most frequently in the

3  situation we're talking about here, the service does indeed

4  commence an audit because by definition we're talking about

5  taxpayers who are likely to get audited anyhow.  And so the

6  service does commence an audit and then refund claim is an

7  issue that's examined during the course of the audit.

8        THE COURT:  Let's take that scenario.

9        MR. RIZEK:  Yes.

10        THE COURT:  Is that an adversarial proceeding?

11        MR. RIZEK:  Under the --

12        THE COURT:  Under Loving?

13        MR. RIZEK:  Under the teaching of Loving I think it

14  is, Your Honor.  I think what Loving says is the preparation of

15  returns, and I would submit that includes any return, is not

16  practiced before the IRS because it does not involve

17  representation and it is not involved in adversary proceeding.

18        I would submit that in the course of the audit if the

19  CPA originally represents the taxpayer in dealing with the IRS

20  in the course of that audit that he would then be engaged in

21  practice because it is an adversary proceeding within the

22  context of what Loving said.  Loving said an adversary

23  proceeding is the examination of a return or an appeal

24  subsequent litigation which is irrelevant here.

25        THE COURT:  So your position is that the IRS properly

1    prohibited your clients from entering contingency fee

2    arrangements once the audit proceeding begins and not before?

3            MR. RIZEK:  Although interestingly, Your Honor, in

4    10.27 they could have done that, but they didn't.  The 10.27

5    actually permits contingency fee for the examination of an

6    original return.  But it's that pre entry of appearance period,

7    if you will, when an audit commences if Mr. Ridgely were to, if

8    the taxpayer wanted Mr. Ridgely to represent him, the taxpayer

9    would have to execute a power of attorney form.  That's right

10   in the regulations under the practice regulations.

11           It would have to designate what Mr. Ridgely is

12   authorized to do.  Meaning for example, the agency description

13   that is described in Loving, and he would have to submit that.

14   The service will check to make sure that he is a CPA in their

15   system as an authorized practitioner.  And at that point we

16   would submit that he is engaged in practice going forward.

17           But the prior activity of just preparing the refund

18   claim just as preparing an original return in Loving would not

19   be practiced before the IRS under Loving.

20           THE COURT:  Is the refund claim included in the

21   amended return or is there separate documentation and forms, et

22   cetera that one must bill out in order to apply for --

23           MR. RIZEK:  Right.  I draft a lot of refund claims.

24   It's a little bit of an art.  But the form itself literally has

25   two couples, original return and amended return.  You flag the

1    issue that differs and then there's a box on the bottom

2    although there's usually a statement attached to it that sets

3    forth what the issue is.  And it may be something very simple.

4    It may simply say taxpayer forgot to claim are any expenditures

5    for this subsidiary and we're increasing our RD claim, the

6    credit claim for that there it is.

7            It may be more elaborate.  Sometimes you might not even

8    know what the actual final number is.  Suppose it's an issue of

9    foreign tax credit depending on what your foreign subsidiaries

10   ultimately have to pay in India or China or France.  You might

11   say, we're claiming additional foreign tax credit, we're not

12   sure of the amount yet.

13           Now if you have supporting documentation, you're free to

14   submit it and that facilitates the examination frequently and

15   sometimes it is more likely to lead to an immediate granting of

16   the refund claim.  Sometimes you don't do that.

17           THE COURT:  Who signs the refund claim?

18           MR. RIZEK:  The taxpayer.

19           Mr. Ridgely may be a sign and preparer as a CPA, but

20   ordinarily they do not do that.  But they are nevertheless

21   return preparers as defined by the 7701 regs I referred to

22   earlier because the 7701 regs say that you can be a non-signing

23   return preparer by virtue of assisting in the preparation of a

24   return, in a substantial portion of the return.  So in the

25   situation I hypothesized where the only thing that changes is

1   the think you're working on, you'd be like a non-signed

2   preparer potentially in that circumstance.

3       So to finish with the first point that I think the Court

4   asked me about, in the wake of Loving the standards, the things

5   that Loving describes is this practice, is this representation

6   of a taxpayer are no more met by an amended return, an ordinary

7   refund claim, than they are by an original return.  So I think

8   --

9       THE COURT:  So you're right about that.  Do I have to

10  issue a new injunction or simply you're covered by the one

11  that's already in place; is that right?

12      MR. RIZEK:  The holding is the same.  I grant you the

13  holding would be the same, but the relief request is different.

14      As you know Loving related to the regulation of persons

15  who were not otherwise practitioners like CPAs, not CPAs or

16  accountants and related to whether they could specifically be

17  required to undergo testing and certification and CLE in order

18  to be authorized to prepare returns.  That's technically a

19  different issue, different subsections of Circular 230.

20      The holding I think here would be the same.  Preparing a

21  refund claims is under Loving not practiced before the IRS,

22  therefore the IRS is not authorized to regulate it, therefore

23  the prohibition in 10.27 charging contingent fees in doing so

24  is ineffective.  I think the Court does have to order a

25  separate order for that.

1          THE COURT:  But is that ordered by way of declaratory

2   relief or injunctive?

3          MR. RIZEK:  I think it would have to be injunctive

4   relief, Your Honor.  I think the service, a mere declaration

5   would not enjoin the service from enforcing it.  It would

6   require a person against whom it was being enforced to I guess

7   a certain collateral estoppel or something against the

8   Government there.

9          THE COURT:  Well, I'll ask the Government.  Is the

10  IRS enforcing this currently against your client in those

11  similar situations?

12         MR. RIZEK:  Not against our client because he's

13  complying with the prohibition and that's why he brought this

14  lawsuit to test whether he needs to continue to do so.

15         THE COURT:  And otherwise.

16         MR. RIZEK:  And otherwise comply --

17         THE COURT:  Against other CPAs who made the, enter

18  contingent fees to do it, contingency arrangements to do this.

19         MR. RIZEK:  I don't have any cases like that, Your

20  Honor, and frankly I do not know.

21         THE COURT:  Okay.

22         MR. RIZEK:  Let me if I could turn slightly to the

23  Court's other question which I think if I may restate it is

24  whether the fact that Mr. Ridgely is a CPA otherwise engaged in

25  what we would concede is practice before the IRS makes him

1   subject to regulation with respect to activities that are not

2   practiced before the IRS.

3        And we, this is in the pleading.  We would not contest

4   that activities that are involved in the actual practice before

5   the IRS what Loving says is the practice, that is the act of

6   presentation, representation of a tax payer in the course of an

7   audit appeal, the IRS can require certain things there.  They

8   are authorized to regulate that practice and they may for

9   example require truthfulness in dealings with the IRS and

10  indeed have so in Section 10.22.  There is also statutory

11  authority.

12       THE COURT:  Let me interrupt you.

13       Where do you draw the line between non practice and

14  practice?  There's a power of attorney.

15       MR. RIZEK:  Right.

16       THE COURT:  That would form a representational

17  relationship.  There is an appearance.

18       MR. RIZEK:  Yes.

19       THE COURT:  And is there a meeting sufficient, a

20  telephone call, you said a notice of appearance or making an

21  appearance.  What does that entail in your view in order to

22  trigger the services authority to regulate.

23       MR. RIZEK:  Sure.  There's a very easy answer for

24  that, Your Honor, which is for a variety of reasons both

25  procedural and substantive involving Section 6103 of the code

1   which for the Court's benefit is a provision that generally

2   requires non disclosure of taxpayer information to any person.

3        The IRS will not talk to me about my taxpayer client

4   until I send them that power of attorney form, until I make the

5   first phone call that said my client got a letter from you,

6   I'd like to talk to you about it.  And I say do you have a

7   power of attorney form?  I say yes, I just had them sign it,

8   where should I fax it to?

9        When I fax it to them and I make that second phone call

10  I think we would agree that now I'm engaged in the practice

11  with the IRS.  I'm actually actively representing the tax

12  taxpayer.  I've gotten that power of attorney.  I provided it

13  to the IRS and in effect entered an appearance and we're in

14  what Loving referred to as an adversary proceeding.  So I think

15  we'd be comfortable with that.

16       The other thing that I think -- and one thing in all

17  candor I came into this case late like you did, Judge.

18            THE COURT:  We're in the same boat.

19            MR. RIZEK:  A little bit.  I'm sure you know a lot

20  more about the law than I do, but I know a little bit about tax

21  practice.  One of the things that the briefing really doesn't

22  touch on, but it's mentioned in a few places is Section 330

23  (b).  In Section 330 (b), authorizes discipline of people who

24  are otherwise admitted to practice.

25       Now I read the first sentence which is the subject of

1    much of the reading, the first sentence of Section 330 (a) says

2    subject to 5 U.S.C. 500, the IRS may regulate practice of

3    representatives -- Section 330 (a) says subject to 5 U.S.C. 500

4    the Secretary may regulate the practice of representatives of

5    persons before the Department, the IRS.  But that subject to

6    means CPAs and attorneys are sort of, for lack of a better

7    term, automatically authorized to practice.  The statute in

8    U.S.C. 500 says they may practice before the IRS.

9        Where the Government's authority to regulate those people

10   comes is not really from 330 (a) at all, it's from 330 (b).

11   And 330 (b) says the IRS, the Secretary may provide discipline

12   against people for four things; incompetence in their practice,

13   disreputable conduct, fraud against their own client which is

14   actually the fourth one listed, and violation of regulations

15   prescribed by this section.  Now that regulations provision is

16   a bit circular because it goes back to what the authority

17   promulgated regulations is in the first place.

18        But leaving that aside, if you look at Section 10.51 of

19   Circular 230.  There are numerous provisions in there that are

20   said to be disreputable conduct for which tax representatives

21   even attorneys and accountants who are authorized by virtue of

22   5 U.S.C. 500 authorized to practice may be sanctioned for.

23   Things like conviction of criminal offenses, conviction of

24   felonies, giving false information to the IRS, threatening your

25   own client, which is one I've never actually seen applied, but

1    it's there.

2        And to the extent a practitioner is engaged in those

3    things, even if they occur outside of practice willful failure

4    to file a practitioner's own tax returns is for example the

5    single most enforced provision in Circular 230 and it I think

6    fairly represents incompetence or disreputable conduct on the

7    part of a practitioner.

8        So we would admit that practitioners who are authorized

9    by 5 U.S.C. 500 attorneys or accountants can be sanctioned for

10   matters engaged that involve their practice before the IRS and

11   matters that reflect on their competence or reputable conduct.

12       But let me change the hypothetical for a minute.  If we

13   assume for the moment, assume for the moment that preparing

14   amended returns is not practiced before the IRS.  And assume

15   for let's change the hypothetical though just slightly.  I'm an

16   attorney.  I have clients who believe it or not don't do tax

17   work.  If I'm engaged to write a demand letter for a tort

18   victim to the tort fees, I may want to charge a contingent fee

19   for that.

20       The Government's theory because I'm engaged in practice

21   before the IRS separately, they can regulate things that are

22   not practiced before the IRS.  So they could say no you can't

23   enter that arrangement.  The difference between me entering

24   that arrangement with my client in a non tax practice matter

25   and Mr. Ridgely entering that arrangement with a client in a

1   non tax practiced matter is indistinguishable.

2       I don't think the Government would claim they can keep

3   me from charging contingent fees for tort cases.  So I don't

4   see how they are entitled to regulate the preparation of

5   amended returns either since it doesn't reflect on competence,

6   disreputable conduct or fraud and they're not authorized to

7   regulate it per level.

8       So we would submit that to the extent that it relates to

9   those characteristics and B, or involves an active

10  representation in a contested proceeding with a power of

11  attorney and so forth, then the service can regulate that

12  activity.  So that's where we draw the line.

13          THE COURT:  But putting aside Loving for a moment.  I

14  suspect the service will argue that there have been findings of

15  fraud and disrepute with respect to contingency fee

16  arrangements entered into for the preparation of tax returns

17  and perhaps as well any returns and doesn't the hearing

18  authority regulate the folks who are regularly appearing before

19  the agency, isn't that broad enough to authorize this

20  particular regulation?

21          MR. RIZEK:  Well let me answer your question a little

22  bit more precisely if I might.

23          THE COURT:  There weren't findings of fraud with

24  connection with tort victims or things like that, right?

25          MR. RIZEK:  Well, there might be, and there could

1    just as easily be.

2        THE COURT:  That wasn't the reason for the extension

3    of Circular 230.

4        MR. RIZEK:  No.  And that's not the reason why they

5    would be authorized and they would be authorized to regulate

6    that, if you will, to sanction a practitioner for fraud because

7    that's something that does relate to incompetence or

8    disreputable conduct.  But you can't flatten the bar entering a

9    contingent fee arrangement unless they make some showing that

10   it relates to incompetence and disreputable conduct or fraud of

11   a client.  And they made no effort in the administrative record

12   to make any showing like that.  They simply said well, we're

13   concerned about the audit lottery and we're concerned about

14   late file returns and, you know, it's hard.  I'm sympathetic to

15   that because I'm a big proponent of giving the IRS more

16   resources, but regulating practitioners through contingent fee

17   rules is no way to accomplish those non disciplinary related

18   rules.

19        THE COURT:  Anything else?

20        MR. RIZEK:  I can answer any of the other Court's

21   questions.

22        THE COURT:  Why don't we hear from Mr. Lambert.

23        MR. RIZEK:  Okay.

24        THE COURT:  Thank you.

25        MR. LAMBERT:  Good morning, Your Honor.

1          THE COURT:  Good morning.  So how is filing Original

2     Refund Claims any different than the tax returns that were

3     issued in Loving?

4          MR. LAMBERT:  Well, I'd like to take a step back from

5     that question, Your Honor.  I think it's important to note that

6     Loving specifically held that individuals who were not

7     authorized to practice or Loving was about unenrolled tax

8     return preparers who were not authorized to practice.  In fact,

9     the Internal Revenue Service trying to expand their authority

10    to incorporate them into Circular 230.

11         Now the IRS is for almost a hundred years now been able

12    to regulate the individuals who appear in the representation

13    capacity before them.  The CPAs, attorneys and world agents and

14    the like, it has been doing that for years.  It has received

15    congressional approval through doing that as well.  That's

16    evident in one of the cases that we cited in Pool which was an

17    unpublished District Court case.

18         It should be noted that the District Court in Loving

19    specifically held or specifically found the small definition

20    for what they defined as tax return preparers.

21         Quoting the District Court says the rule does encompass

22    those preparers whose only appearance before the IRS is a

23    preparation and submission of tax returns.  And this opinion

24    subsequent references to tax return preparers concerns this

25    limited role.

1      Mr. Ridgely as a CPA is not practicing in that limited

2  role.  His role when he's preparing a return, when he's

3  preparing an amendment --

4      THE COURT:  Let me cut you off one second.

5      How does the definition that you just quoted square with

6  Section 7701 definition of tax return preparer statute which if

7  I'm quoting it correctly means any person who prepares for

8  compensation or prepares any return of tax imposed by this

9  title or any claim for refund of tax imposed by this title.  If

10  a preparation of a claim for refund falls within that

11  definition, why doesn't Loving which dealt with quote unquote

12  tax return preparers also control this case?

13      MR. LAMBERT:  Well, because that definition you have

14  in there encompasses both unenrolled tax preparers and CPAs or

15  attorneys who are in the activity of preparing tax returns.

16  The Loving court essentially defined or narrowed that

17  definition in 7701 to incorporate only those unenrolled tax

18  return preparers that were only appearing before the IRS.

19      THE COURT:  So your position then if a CPA, a

20  registered CPA prepares an ordinary tax return for you or

21  anyone else, the IRS could still prohibit that person from

22  doing so on a contingency arrangement even after Loving?

23      MR. LAMBERT:  Yes, Your Honor.  Especially because

24  the Section 10.27 deals with the contingent fee relationship

25  which is different than actually regulating the preparation of

1    those returns.  It goes to the relationship between the

2    taxpayer and the, excuse me, and either the CPA or the

3    attorney.

4         And the IRS has the statutory authority under Section

5    330 to regulate the practice before Treasury including the

6    authority to regulate contingent fees.  The ability to regulate

7    the fee structure --

8         THE COURT:  Let's take it one step farther.  Let's

9    take Mr. Rizek's hypothetical.  The IRS prohibit that attorney

10   or an attorney that's registered to represent clients before

11   the service in taking a contingency fee case on a tort matter

12   or contract matter.

13        MR. LAMBERT:  Not under Circular 230 and the service

14   is not attempting to regulate the fee structures outside of tax

15   matters.  But when it deals with matters that are practiced

16   before and as practice is defined within Circular 230, to

17   incorporate all matters before the IRS.  A tort matter is not a

18   matter that is before the IRS.  So the IRS wouldn't attempt or

19   wouldn't claim that they have the ability to regulate any kind

20   of fee structure in other sort of legal matters that is not

21   before the IRS.

22        THE COURT:  Is it an original refund request before

23   the IRS?

24        MR. LAMBERT:  Yes.  It is inherently a tax matter.

25   Even the definition before the IRS in the definition of

1   practice is a preparation of documents to be submitted to the

2   IRS.  As a CPA and as an attorney the IRS has the inherent and

3   explicit authority under 31 U.S.C. 330 to regulate that

4   practice.

5           THE COURT:  Didn't Loving say that practice before

6   the agency inherently involves adversarial proceedings for

7   representation are original refund claims do they fall under

8   either of those two criteria?

9           MR. LAMBERT:  We would hold that refund claims are

10  different than regular filing of regular tax returns in that as

11  Mr. Ridgely even said they're telling the IRS the position

12  that's being taken.  There's even a portion on the forms for a

13  narrative to be provided for changes that are made.

14          Mr. Rizek even mentioned variance where on the amended

15  returns or the claims for refund they need to be in line if

16  there's going to be challenged at a later date in the judicial

17  proceeding.  It would be almost akin to filing a complaint,

18  the filing of that amended return.  So there are differences.

19          But in this case the Court doesn't need to get to the

20  question of whether the preparation of filing of an amended

21  return is or is not practiced because in this case, this was

22  brought by a CPA who is under the authority of the IRS and

23  under the regulation of Circular 230.  The Loving court even

24  mentions that, that the IRS has long regulated services of

25  professionals such as attorneys, accountants who appear as

1   representatives of taxpayers in adversarial proceedings before

2   the IRS.

3        Now it's not because of that and Mr. Rizek even

4   mentioned some of the other examples of the IRS being able to

5   discipline an individual for activities that are not practiced.

6   He even mentioned filing of an individual's personal tax

7   returns.  They're not representing anybody, but that goes to

8   the character and the, essentially the quality of practice of

9   the individual for the potential and their activity in

10  practicing before the IRS.

11       Now contingent fees are along that same lines.  The

12  conduct of which they're limiting contingent fees is conduct

13  that is allowed to be regulated.  There is inherent conflict of

14  interest when an individual's outcome or practitioner, the CPA

15  or attorney when the outcome is tied to a position that is

16  taken and that is one of the reasons why the IRS sought to

17  prohibit contingency fees in the amendment in Circular 230

18  under 2.7.

19       THE COURT:  What about a CPA whose conduct is

20  otherwise regulated by virtue of his or her practice before the

21  agency pose less of a risk in that regard than someone who is

22  not registered to do this under Loving?

23       MR. LAMBERT:  It may.  It may pose less of a risk,

24  but that doesn't invalidate the authority of the Internal

25  Revenue Service to require a higher standard of conduct for a

1  CPA or an attorney rather than just a mere tax practitioner

2  that could charge a contingent fee under Loving.

3       I think it's important to know that the enabling statute

4  that was the 31 U.S.C. 330 that was enacted in 1884 dealt with

5  fee relationships of the representatives of claimants way back

6  in 1884.  The IRS back in 1964 regulated the fee structure of

7  practitioners before it when it out banned unconscionable fees.

8  Again, in 1994 the IRS banned contingent fees in situations

9  where practitioners were preparing regular returns, original

10 returns.

11      The amendment that is at issue here in Circular 230 and

12 10.270 was an amendment that expanded that restriction for 1994

13 to also include other matters before the IRS with the four

14 exceptions that are listed in the statute or in the regulation.

15      THE COURT:  Okay, counsel tell me again what the '94

16 regs prohibited by way of contingency fees.

17      MR. LAMBERT:  In 1994 they prohibited contingent fees

18 for the preparation of filing of original tax returns.

19      THE COURT:  By CPAs?

20      MR. LAMBERT:  By CPAs, by attorneys, yes.

21 Practitioners before the IRS as defined in Circular 230.  At

22 that time it did not include unenrolled tax return preparers.

23      THE COURT:  Have those regs ever been challenged?

24      MR. LAMBERT:  Not to my knowledge, Your Honor.

25      This I believe would be the first challenge to the

1    authority of the IRS regarding contingent fees.  And the

2    regulation happened in 1994 and the amendment in 1994 it

3    allowed the contingent fee relationship for the filing of

4    amended return claim for refund if the practitioner believed

5    that it would receive substantial review by the IRS.

6        Essentially what the amendment did in 2007 was to take out

7    that section about the discretionary function with the

8    practitioner if the practitioner believed it would receive

9    substantial review and prohibited all matters before the IRS

10   subject to exceptions which the IRS felt did not have the same

11   conflict of interest.  For example, in judicial proceedings

12   because there is an independent body that is overseeing it for

13   amended or for representation regarding penalties and

14   interests.  Those are situations that typically happen after an

15   examination.   START

16       So the audit process, the other factors that were

17   mentioned within the administrative record were not present in

18   those situations.  The IRS took into account practitioners and

19   other individuals who submitted comments, they amended or they

20   changed what the proposed rates for the final risks to create a

21   reasonable basis for what they were doing.

22           THE COURT:  Okay.

23           MR. LAMBERT:  So, Your Honor, the fact that this case

24   deals with the CPA that alone takes this out of the purview of

25   the Loving decision.

1          THE COURT:  So it doesn't matter if it meets the

2   definition of practice in your view?

3          MR. LAMBERT:  Correct, Your Honor.  Because the IRS

4   is authorized to regulate the activities of practitioners

5   whether they're acting in representational or non

6   representational capacity.  That's exclusively in 31 U.S.C. 330

7   in the final section, Section D which I don't believe it was

8   mentioned in the briefs.

9          But taking a look at that enabling statute itself

10  Congress had amended that to specifically, I will quote from

11  it, there is nothing in this section --

12          THE COURT REPORTER:  Excuse me, counsel, that is too

13  fast.

14          MR. LAMBERT:  I apologize.

15          THE COURT:  Slow down, please.

16          MR. LAMBERT:  Sure.

17          Part D of the Section in 330 and it states nothing in

18  this Section or in any other provision of law shall be

19  construed to limit the authority of the Secretary of the

20  Treasury to impose standards applicable to the rendering of

21  written advice with respect to any entity, transaction, plan or

22  arrangement or other plan or arrangement which is of a type

23  which the Secretary determines as having protection for tax

24  avoidance for evasion.

25          That gives the Secretary the authority to regulate non

1  practice.  It's a written opinion that could be issued even

2  before the preparation of a return, before the preparation of

3  an amended return.  That I believe was congress had added that

4  in 1984, the allowing for that, that exclusive authority by

5  congress in those situations.  That's the regulation of

6  contingent fees whether it's practiced or not practiced would

7  fall in line with that law.

8          THE COURT:  Mr. Rizek says that a practice before the

9  agency begins at a point at which the taxpayer submits power on

10 another form authorizing the preparer to communicate with the

11 service.

12     Do you agree with that?  Is there anything about the

13 preparation of an original refund claim that would trigger

14 quote unquote practice before that claim?

15         MR. LAMBERT:  I would submit with the, if you look at

16 330 part D of the submission of a written opinion, along with

17 the amended return or even an original return would constitute

18 practice before the IRS which is written here and that could be

19 done at any time period.

20         THE COURT:  How does the submission of that document

21 square with the instruction of Loving that there has to be a

22 representation of the preparer must be acting in a

23 representational capacity?

24         MR. LAMBERT:  Your Honor, I think it squares with

25 Loving that there is as a CPA or an attorney, that individual

1   has the potential to be acting in a representational capacity.

2          THE COURT:  Well, doesn't say potential.  It says

3   representative, they do have legal authority to act on behalf

4   of a taxpayer as far as I can see only comes with a power of

5   attorney.

6          MR. LAMBERT:  Well, Your Honor, Loving itself was

7   about the Internal Revenue Service's attempt to enlarge the

8   scope of those that were under its authority.  It looked to

9   practice, it looked to representative to see if the IRS could

10   expand that authority.  The IRS already has the authority for

11   CPAs and attorneys to be regulated under 230 whether they are

12   acting in practice, not practicing --

13          THE COURT:  I understand, that's a fair question.

14          MR. LAMBERT:  -- or non-representational.  So the

15   Court looked to those and looked to other factors to determine

16   that the IRS was not allowed to expand it's authority over

17   previously unregulated individuals.  But the IRS has always had

18   the authority to regulate individuals CPAs, attorneys whether

19   they are acting in representational capacity or not.

20       And Loving specifically excluded them from its holding

21   even though the District Court, there's even a parenthetical in

22   the District Court which says that CPAs or attorneys are

23   regulated by the IRS and subject to Circular 230.  So they have

24   no bone to pick.  The regulations that were validated under 11

25   have no effect on CPAs or attorneys regardless of whether they

1  are practicing or not practicing.

2          THE COURT:  I understand your point.  Anything else?

3          MR. LAMBERT:  Not unless you have any other

4  questions, Your Honor.

5          THE COURT:  No.

6      Mr. Rizek, one more bite.

7          MR. RIZEK:  Your Honor, I'm sympathetic to

8  Mr. Lambert because he's in a tough spot having briefed this

9  case before the Court of Appeals ruled in Loving.

10         His answer to your question about the response in the

11  hypothetical is a perfect example.  He said well, we don't try

12  to do that.  But the question is not whether they try to do

13  that, the question is whether they are authorized to do that

14  and I don't think that the answer to that question and

15  moreover, they have tried to regulate activities that Loving

16  teaches are not practiced and they did so in Loving and the

17  Court of Appeals said we can't do that.  And we would submit

18  they're doing so here as well.

19         So the fact that they haven't yet tried it, I think is,

20  is a little bit of a misdirection.

21         I want to come back to the notion of what a, what goes

22  on a return and amended return.  And his points about

23  submitting an opinion where the return which is something that

24  I have never seen done.

25         But I get asked a lot of time if I'm busy in April as if

1   what I do is fill out a lot of returns and I don't.  I advise

2   taxpayers about positions that may be taken on returns or

3   returns are just a lot more than a set of numbers.  There's a

4   fair bit of thinking and analysis that goes in it.  There's

5   judgment calls, tax positions have to be taken, many which have

6   to be disclosed under a provision of the Internal Revenue Code

7   or to avoid penalties.

8        And the Court of Appeals kind of addressed this.  It

9   said to be sure preparing and signing tax returns could be

10  considered a practice of sorts, especially if a tax preparer is

11  preparing, advising, or making judgments about a taxpayer's

12  liability.  I practice tax law, there is no doubt about that.

13       The Court nevertheless said that Circular 230 doesn't

14  regulate practice in the abstract, it regulates, they are

15  authorized to regulate under 330, practice in the department.

16  You don't need to be an attorney or accountant to prepare a

17  refund claim.  You do to practice before the Government, before

18  the department.

19       The Court of Appeals said that in order to be practice

20  that the Government is authorized to, that the IRS is

21  authorized to regulate under 330 as it's written now, it has to

22  involve those representations and practice procedures.  I don't

23  think that's really been answered by the Government.

24            THE COURT:  The way that I understood Mr. Lambert's

25  argument on this point is that original refund claims involve

1    an element of advocacy in the form of a narrative description

2    of the claims that, you know, to which the service may take

3    issue or with which the service may disagree.  In that sense

4    there's an advocacy element that is unlike the preparation of a

5    normal refund or normal tax returns.

6            MR. RIZEK:  I understand the point, but I think the

7    Court of Appeals has answered it within paragraph, although the

8    exact scope of practice before a court or agency depends on the

9    context to practice before a court or an agency ordinarily

10   first to practice during an investigation, adversarial hearing

11   or other adjudicative proceeding.  That is quite different from

12   the process of filing a tax return.

13           THE COURT:  What if the taxpayer has been notified or

14   reasonably expects that an examination is on the horizon and

15   hires a CPA to prepare a refund claim and to include a

16   narrative of the positions being taken by the taxpayer in

17   advance?

18           MR. RIZEK:  Well, if they're already in the context

19   of an audit and the representative is interacting with the IRS

20   in doing so, I think that would clearly be practice.  If

21   they're not in the context of an audit beforehand and as in the

22   ordinary claims that are at issue here I would think that is

23   not practice.

24           THE COURT:  So the anticipation of audit would not.

25           MR. RIZEK:  I think that's correct, Your Honor.

1    We can all anticipate being audited although a few of

2  the person's returns are actually audited, but I think that's

3  the dividing line that the Court of Appeals said between what

4  is not practiced before the agency and what is practiced before

5  the agency.

6    The other point I wanted to make is Mr. Lambert's point

7  about 330 D which I think was actually amended in 2004 to add

8  that language in D.  And he said that authorized the regulation

9  of practice.  Well, I'm not really sure it does that.

10    What it actually says is the IRS is apparently although

11  it doesn't even say they're authorized but Congress thought

12  they were authorized to regulate tax shelter opinions a

13  particular problem.  They have congressional authorization to

14  do that.  They have indeed done that in Section 10.35.

15  Although I would note that just this, just this last week, Your

16  Honor, the IRS repealed those regulations and said no, we're

17  not going to regulate those anymore.

18    Mr. Lambert said in 2007 the IRS took out the provision,

19  and the contingency fee which is what we're talking about here,

20  about substantive review which I found, I've always found

21  rather odd.

22    In fact, I find Mr. Lambert's and the Government's

23  position here to be indirect conflict with the stated reason

24  for doing that which was taxpayers are playing the audit

25  lottery.  I don't know how you can be playing the audit lottery

1    on the one hand and starting a case that's getting substantive

2    review on the other hand which seems to be the Government's

3    position with respect to an ordinary refund claim.

4        I think they are somewhat stuck with the notion that

5    that is not the presentation of a case based on the actual

6    justifications they offered in, in 2007.

7        I would just lastly note that those justifications are

8    not supported by any of the evidence in the record.  Every time

9    the Government cites the, those three justifications, it cites

10   and I would encourage the Court to go back to the Court's Clerk

11   and read where they cite.  They cite their own preambles which

12   they're not citing any evidence.  In fact, they ask for

13   comments on this and nobody said yes, that's a problem

14   prohibited because they can't cite anything like that.

15       So yes, they changed the regulation to accommodate

16   interest and penalties, because they felt that that was a

17   reasonable request by a taxpayer.  The fact that they were

18   reasonable in one regard doesn't mean that they weren't

19   reasonable on the other.

20       So I don't have anything else unless the Government does

21   but those are our positions.

22           THE COURT:  Thank you.

23       Mr. Lambert, just one more question.  I asked Mr. Rizek

24   whether the Loving injunction was being currently enforced

25   against licensed practitioners and he said he didn't know.

1          What's the answer to that question?  Enforced with

2    respect to the contingency fee.

3          MR. LAMBERT:  Well, Your Honor, the Loving injunction

4    dealt with different regulations invalidating regulations.  It

5    didn't invalidate the regulations under 10.27.  So as it

6    pertains to practitioners being CPAs or attorneys, I'm not

7    aware if the IRS is currently enforcing that.  It is

8    enforceable at the current stance.  Now I think IRS would say

9    it's not enforceable under Loving to unenrolled tax preparers.

10          THE COURT:  Again, it's CPAs and accountants.

11          MR. RIZEK:  Yes, Your Honor.

12          THE COURT:  Thank you very much.  We're adjourned.

13          (Proceedings concluded at 11:05 a.m.)

14                              -oOo-

15

16

17

18

19

20

21

22

23

24

25

1                               CERTIFICATE

2          I certify that the foregoing is a true and correct

3    transcript, to the best of my ability, of the above pages, of

4    the stenographic notes provided to me by the United States

5    District Court, of the proceedings taken on the date and time

6    previously stated in the above matter.

7          I further certify that I am neither counsel for, related

8    to, nor employed by any of the parties to the action in which

9    this hearing was taken, and further that I am not financially

10   nor otherwise interested in the outcome of the action.

11

12   _____          _____

13   /s/Crystal M. Pilgrim, RPR               Date:  June 20, 2014

14

15

16

17

18

19

20

21

22

23

24

25